2359

Nathaniel O'BANNER, Employee/Claimant, Appellant v. WESTING-
    HOUSE ELECTRIC CORPORATION, Self-Insured, Carrier, Respon-
    dent.

(459 S.E. (2d) 324)

Court of Appeals

*David S. Mathews,* of *Moss & Kuhn,* Beaufort, *for appellant.*

*Charles B. Barnwell, Jr.,* of *Horger, Barnwell & Reid,* Orangeburg, *for respondent.*

Heard May 4, 1995.

Decided June 12, 1995.

HOWARD, Judge:

In this workers' compensation action, the single commissioner granted the stop-payment application filed by the employer, Westinghouse Electric Corporation (Westinghouse), thereby terminating temporary total benefits to the claimant, Nathaniel O'Banner. The Workers' Compensation Commission affirmed, and the circuit court found substantial evidence in the record to support the commission's order. O'Banner appeals the circuit court's affirmance of the order terminating benefits and the finding of a 15% permanent partial disability to his back. We affirm.

O'Banner was a copper cutter at Westinghouse between 1982 and August 1, 1988, when he first injured his back at work. As a result of the injury, the commission found O'Banner sustained a 25% permanent partial disability to his back, for which he was fully compensated. Neither party appealed

this award. O'Banner reinjured his back at Westinghouse on February 18, 1990. Westinghouse reinstated the temporary total disability payments to O'Banner.

The commissioner heard Westinghouse's request to terminate the temporary disability payments on January 5, 1993. Westinghouse introduced the written report of O'Banner's physician, Dr. Stephen E. Rawe, which stated O'Banner reached maximum medical improvement (MMI) on June 29, 1992, and he had sustained a 15% impairment to his back. Westinghouse also introduced a videotape of O'Banner hitting practice fly balls for a softball team. Based on the evidence adduced at the hearing, the commissioner ruled O'Banner had reached MMI and suffered "an additional 15% permanent partial disability to his back." This order was affirmed by the full commission and the circuit court.

On appeal, O'Banner first asserts the commission erred in terminating temporary total disability payments for two reasons: 1) Westinghouse introduced no evidence that O'Banner was able to return to the same or other suitable job; and 2) O'Banner was still being treated for his condition as evidenced by the renewal of the prescription pain medication. We disagree.

A reviewing court will not disturb the findings of the Workers' Compensation Commission if its findings are supported by substantial evidence on the record as a whole. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 276 S.E. (2d) 304 (1981); S.C. Code Ann. § 1-23-380(A)(6) (Supp. 1994). Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached. *Gibson v. Florence Country Club*, 282 S.C. 384, 318 S.E. (2d) 365 (1984).

O'Banner argues Westinghouse must present a medical certificate stating O'Banner is able to return to work before his temporary total benefits may be terminated. In support of this position, O'Banner cites *Adams v. Rice Servs.*, 313 S.C. 488, 443 S.E. (2d) 391 (1994), which held the commission erred in permitting the employer to stop temporary payments where there was no evidence in the record that the claimant could return to work. However, in that case the South Carolina Supreme Court analyzed the employer's compliance with S.C. Code Ann. Reg. 67-10 (1989), which has

been superseded by Regulation 67-507.[1]

Regulation 67-507, applicable in this case, reads in pertinent part:

. . . .

B. Disability is presumed to continue until the employee returns to work.

C. The employer's representative may request a hearing for permission to terminate compensation benefits by:

. . . .

(3) Attaching the following to the Form 21 [Employer's Request for Hearing]:

(a) A medical certificate of the authorized health care provider stating the claimant has reached maximum medical improvement; *or*

(b) A medical certificate of the authorized health care provider stating the claimant is able to return to the same or other suitable job, an impairment rating, if any, and an affidavit of the employer that the same or other suitable job has been provided to the claimant; *or*

(c) A medical certificate of the authorized health care provider stating the claimant is able to return to the same or other suitable job and an impairment rating; *or*

(d) A medical certificate of the authorized health care provider stating the claimant refuses medical treatment.

S.C. Code Ann. Reg. 67-507 (emphasis added).

The current regulation unambiguously allows the employer to attach only a medical certificate stating the claimant has reached MMI to support its stop-payment application. Reg. 67-507 (C)(3)(a); *see Brown v. Owen Steel Co.*, 316 S.C. 278, 450 S.E. (2d) 57 (Ct. App. 1994) (temporary total disability is properly terminated when the employer provides one of the four certificates required in Regulation 67-507 (C)(3) without regard to the employee's work status).

We refuse to read into the presumption articulated in subsection (B) a requirement that the employer provide separate proof of claimant's ability to return to work, in addition to the

---

[1] Regulation 67-10 provided as follows: "[A] request for permission to discontinue compensation payments . . . shall be accompanied by a proper medical certificate to certify that the employee is able to return to the same job or other suitable job, and that such job has been provided by the employer. . . ."

requirements of subsection (C). Regulation 67-507(B) simply sets forth a presumption of disability to ensure the claimant will continue to receive temporary benefits until the employer successfully rebuts that presumption by complying with the procedure set forth in subsection (C) of the regulation. The record contains substantial evidence that Westinghouse complied with the regulation.

O'Banner also contends the continuing prescriptions he received from Dr. Rawe constitute active care and preclude the commission's finding that O'Banner had reached MMI. Workers' compensation awards have generally provided for temporary total disability benefits until maximum medical improvement, at which point a claimant receives permanent partial disability if warranted. *Cf. Williams v. South Carolina Dep't of Mental Retardation,* 308 S.C. 438, 418 S.E. (2d) 555 (Ct. App. 1992). Dr. Rawe reported O'Banner reached MMI on June 29, 1992. O'Banner testified the last time he saw Dr. Rawe was September 10, 1992, when he was discharged. However, O'Banner continued receiving prescriptions for muscle relaxers, sleeping pills, and pain medication up to the time of the hearing. Dr. Rawe refilled these prescriptions over the phone through December of 1992. O'Banner called Dr. Rawe's office a week before the hearing for a refill, but Dr. Rawe's nurse told O'Banner that Dr. Rawe would not refill the prescriptions.

Maximum medical improvement is a term used to indicate that a person has reached such a plateau that in the physician's opinion there is no further medical care or treatment which will lessen the degree of impairment. *See Scruggs v. Tuscarora Yarns, Inc.,* 294 S.C. 47, 362 S.E. (2d) 319 (Ct. App. 1987) (substantial evidence supported a finding of maximum medical improvement despite the claimant continuing to receive physician therapy). O'Banner's argument that the renewal of the prescriptions is inconsistent with a finding of maximum medical improvement is without evidentiary or legal support. To the contrary, Dr. Rawe's report coupled with the subsequent continuation of prescriptive medicines constitutes substantial evidence from which the commissioner could conclude the medication helped to temporarily alleviate O'Banner's remaining symptoms, but his medical condition would not further improve.

O'Banner finally argues the award of 15% permanent partial disability to his back is not supported by substantial evidence. He postulates the physical restrictions placed upon him by Dr. Rawe in his permanent impairment report are greater than those placed upon him following his first injury. He therefore deduces his permanent disability from this injury must be greater than the 25% disability assigned to the first injury. According to this argument, when the single commissioner first noted the previous disability of 25%, and then phrased the disability award as an "additional" 15%, the commissioner was actually awarding a 40% permanent disability because a 15% disability award is not supported by the evidence.[2] We find this argument to be without merit for two reasons.

■ First, the only logical interpretation of the award from the single commissioner is that O'Banner received a permanent partial disability of 15% to his back from the second injury. In construing a judgment, the determinative factor is the intent of the judge who wrote it, as gathered not from an isolated part of the judgment, but from all parts thereof. *Management Recruiters v. R.J.R. Mechanical, Inc.*, 304 S.C. 399, 404 S.E. (2d) 908 (Ct. App. 1991). The single commissioner never made a finding of 40% disability in the order, and we will not read the word "additional" in isolation to make such a finding.

■ Second, the award of 15% disability is supported by substantial evidence in the record. The medical evidence presented at the hearing showed O'Banner had an impairment of 15%. Dr. Rawe also stated that O'Banner "is capable of doing light work and [should] just avoid excessive bending of the back or lifting more than 30 lbs." However, Westinghouse presented the videotape surveillance of O'Banner hitting softballs. Further, the two private investigators testified that during the five days of surveillance, they never saw O'Banner exhibit any physical disabling conditions.

[2] The single commissioner's order states, "The Commissioner is aware that the claimant previously sustained a twenty-five (25%) percent disability to his back under a previous award of this Commission which was paid by the same employer." Immediately thereafter, the commissioner awarded O'Banner an "*additional* fifteen (15%) percent permanent disability to his back (emphasis added)." O'Banner's assertion is, in essence, that the commissioner circuitously stated her award of 40% disability as 25% plus an additional 15%.

The determination of witness credibility and the weight to be accorded evidence is reserved to the commission. *Ford v. Allied Chem. Corp.*, 252 S.C. 561, 167 S.E. (2d) 564 (1969); *DeBruhl v. Kershaw County Sheriff's Dep't*, 303 S.C. 20, 397 S.E. (2d) 782 (Ct. App. 1990). This court cannot substitute its judgment for that of the commission as to the weight of the evidence on questions of fact. S.C. Code Ann. § 1-23-380(A)(6) (Supp. 1994). The possibility of drawing two inconsistent conclusions from the evidence does not prevent the commission's findings from being supported by substantial evidence. *Camp v. Spartan Mills*, 302 S.C. 348, 396 S.E. (2d) 121 (Ct. App. 1990). We conclude the commission's award of 15% disability is supported by substantial evidence.[3]

Affirmed.

HOWELL, C.J., and GOOLSBY, J., concur.

---

[3] We need not address O'Banner's final argument that the 40% award of disability should not have been offset by the previous award because we find the commission did not award 40% disability.