489 S.E.2d 219

**Steven W. PEARSON, Respondent,**

v.

**JPS CONVERTER & INDUSTRIAL CORPORATION, Employer, and Hewitt, Coleman & Associates, Carrier, Appellants.**

**No. 2672.**

Court of Appeals of South Carolina.

Submitted May 6, 1997.

Decided June 9, 1997.

Rehearing Denied Aug. 28, 1997.

394

David Hill Keller, Haynsworth, Marion, McKay & Guerard, Greenville, for appellants.

Kathryn Williams, Greenville, for respondent.

HOWELL, Chief Judge:

Appellants JPS Converter & Industrial Corporation, and Hewitt, Coleman & Associates, (hereinafter "Employer") appeal the order of the single commissioner and the full commission, as affirmed by the circuit court, awarding benefits to Steven W. Pearson. We affirm.

## I.

Pearson was injured on November 10, 1992, while working at JPS when he fell and struck his head. Thereafter, he saw several physicians who formed similar opinions as to the extent of his injury, his level of disability, and his poor prospects for improved health and future work.

In August 1994 Employer filed a form 21, alleging that Pearson had reached maximum medical improvement. In November 1994 Employer filed a form 58, requesting that temporary total disability benefits be terminated and the extent of Pearson's permanent injuries be determined. The single commissioner held a hearing in November 1994. The commissioner ruled that Pearson reached maximum medical improvement in October 1994, that his injuries resulted in total and permanent disability, and that he was entitled to lifetime treatment and benefits.

Employer appealed the single commissioner's ruling, arguing that the evidence failed to support his findings and that it was contradictory to find that Pearson reached maximum medical improvement yet simultaneously order additional treatment. The full Commission and the circuit court both affirmed.

II.

Employer argues that the circuit court erred in affirming both of the Commission's findings that Pearson reached maximum medical improvement and that his total and permanent disability is a result of physical brain damage. We disagree.

A reviewing court will not disturb the findings of the Workers' Compensation Commission if its findings are supported by substantial evidence on the record as a whole. *See Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981); *O'Banner v. Westinghouse Elec. Corp.*, 319 S.C. 24, 459 S.E.2d 324 (Ct.App.1995); S.C.Code Ann. § 1–23–380(A)(6) (Supp. 1996). Substantial evidence is such relevant evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached. *Lark; Gibson v. Florence Country Club*, 282 S.C. 384, 318 S.E.2d 365 (1984). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Grayson v. Carter Rhoad Furniture*, 317 S.C. 306, 454 S.E.2d 320 (1995); *Hoxit v. Michelin Tire Corp.*, 304 S.C. 461, 405 S.E.2d 407 (1991).

A.

■ "Maximum medical improvement is a term used to indicate that a person has reached such a plateau that in the physician's opinion there is no further medical care or treatment which will lessen the degree of impairment." *O'Banner*, 319 S.C. at 28, 459 S.E.2d at 327. Employer argues that the finding that Pearson reached maximum medical improvement is unsupported by substantial evidence, primarily because additional treatment was ordered. We disagree and conclude that evidence supports the finding that additional medical treatment may improve Pearson's overall quality of life and ability to cope, but not otherwise impact the finding on maximum medical improvement.

The circuit court first held that Employer waived and was estopped from arguing that Pearson had not reached maximum medical improvement, because Employer's initial position before the single commissioner was that Pearson had reached maximum medical improvement. We need not address this issue, however, because on the merits, there is substantial evidence to support the Commission's findings.

■ Dr. Woodward, Pearson's primary treating neurologist, testified that Pearson reached maximum medical improvement in approximately August or September 1994. Dr. Bachman, the director of Behavioral Neurology at the Medical University of South Carolina, indicated that Pearson's "chances for further spontaneous improvement are poor," and if there was no further improvement in his condition, then he would consider him permanently and totally disabled from his injury. In an August 1994 report, Dr. Shallcross, a Greenville psychiatrist, indicated to "a reasonable degree of medical certainty, based on a review of [Pearson's] records and [his] interview, that [Pearson] has suffered permanent brain damage which has resulted in permanent disability." Shallcross recommended that Pearson attend a post-acute brain injury program, and if Pearson was not going to attend, then he considered him to have reached maximum medical improvement, and he was not an acceptable employee in any gainful situation. In August 1994, Dr. Ellison stated that Pearson "is permanently and totally disabled and I would rather think that the chances of him ever working again are nil." Further-

more, Dr. Ellison stated that Pearson "has a closed head injury, and if anything, his mental status is likely to decline further over time." Thus, the evidence clearly supports the finding that Pearson had reached maximum medical improvement. *See generally Lark; O'Banner.*

Contrary to Employer's argument, the fact that his physicians recommended and the Commission ordered additional treatment does not negate the conclusion that Pearson reached maximum medical improvement. First, a finding that additional medical treatment is required does not automatically mean that maximum medical improvement has not been reached. *See e.g., O'Banner* (Continued treatment of prescriptive medicine did not preclude a finding of maximum medical improvement, because the medication could temporarily alleviate claimant's symptoms but not further improve his medical condition.).[1] Second, as the circuit court correctly noted, the legislature explicitly anticipated the need for lifetime medical care for those persons totally and permanently disabled. *See* S.C.Code Ann. § 42–15–60 (1985) ("In cases in which total and permanent disability results, reasonable and necessary ... treatment or care shall be paid during the life of the injured employee, without regard to any limitation in this title including the maximum compensation limit."). Indeed, here the record demonstrates that further medical care may improve Pearson's quality of life and his ability to cope without improving his overall disability rating. Dr. Woodward testified Pearson had shown no objective improvement during the course of 1994. Though recommending future additional intensive rehabilitation for traumatic brain injury, Dr. Bachman stated that Pearson's prospects "for competitive employment in the future are extremely poor." Dr. Shallcross's report indicated that Pearson's "sort of problems are very

---

1. Employer's reliance on *Grayson v. Carter Rhoad Furniture,* 317 S.C. 306, 454 S.E.2d 320 (1995), *Bowen v. Chiquola Manufacturing, Co.,* 238 S.C. 322, 120 S.E.2d 99 (1961), and *Mullinax v. Winn–Dixie Stores, Inc.,* 318 S.C. 431, 458 S.E.2d 76 (Ct.App.1995), is misplaced, because these cases illustrate that restrictions or additional treatment may, but does not always, mean that maximum medical improvement has not been reached. *Cf. Scruggs v. Tuscarora Yarns, Inc.,* 294 S.C. 47, 362 S.E.2d 319 (Ct.App.1987) (Substantial evidence supported a finding of maximum medical improvement despite the claimant continuing to receive physical therapy.).

hard to treat." More explicitly, Dr. Stewart, a vocational and rehabilitation specialist, recommended "continued medical and neurological care and treatments as needed, continued psychological care and treatment as needed, referral to a comprehensive pain management/physical development program and center, supportive counseling, and case management services. *All of these recommendations are suggested for quality of life reasons rather than for gainful employment reasons.*" (emphasis added).

Accordingly, we affirm the Commission's finding that Pearson reached maximum medical improvement in October 1994.

### B.

S.C.Code Ann. § 42–9–10 (Supp.1996) provides, in pertinent part, that "any person determined to be totally and permanently disabled . . . who has suffered physical brain damage is not subject to the five hundred week limitation and shall receive the benefits for life." Employer concedes that Pearson is totally disabled, but argues the record does not sufficiently support that Pearson's total disability was a result of physical brain damage. Instead, Employer asserts that Pearson's disability was a result of a combination of psychological problems and some brain damage. We disagree.

The record overwhelmingly supports the Commission's findings that Pearson is totally and permanently disabled as a result of physical brain damage he suffered from the work-related accident. In his deposition Dr. Woodward testified that Pearson was totally disabled as a result of the organic brain damage related to the November 1992 work injury. Dr. Shallcross indicated that Pearson suffered physical brain damage which has resulted in permanent injury. Dr. Ellison stated that Pearson's "disability is due to physical brain damage." Dr. Bachman's report indicated that "Mr. Pearson's disability is most probably causally related to physical brain damage sustained in his accident at work on November 10, 1992."

Employer's argument to avoid the lifetime benefit provision of section 42–9–10 because of Pearson's psychological problems is meritless. We agree with the circuit court's

interpretation that section 42–9–10 does not require the total and permanent disability to be *solely* the result of physical brain damage—the statute only requires that a claimant be totally and permanent disabled *and* suffer physical brain damage as a result of the injury. At most, one physician, Dr. Woodward, indicated that he could not determine whether the greater cause of Pearson's disability was his psychological deficits or his organic brain damage. Importantly, as the circuit court correctly noted, "[n]ot one physician has stated that Claimant's disability is not due to physical brain damage."

Accordingly, for the foregoing reasons, the circuit court's ruling upholding the Commission's findings is hereby

**AFFIRMED.**

GOOLSBY and ANDERSON, JJ., concur.