517 S.E.2d 698

**Dennis Randall HENDRICKS, Employee, Appellant,**

v.

**PICKENS COUNTY, Employer, and Association of Counties Self–Insurance Fund, Carrier, Respondents.**

No. 2958.

Court of Appeals of South Carolina.

Heard Jan. 12, 1999.

Decided March 15, 1999.

Refiled May 6, 1999.

Rehearing Denied June 19, 1999.

408

Edwin L. Turnage, of Greenville, for appellant.

Richard B. Kale, Jr., of Greenville, for respondents.

## ORDER DENYING PETITION FOR REHEARING

PER CURIAM:

After careful consideration of the Petition for Rehearing, the Court is unable to discover any material fact or principle of law that has been either overlooked or disregarded and, hence, there is no basis for granting a rehearing. It is, therefore, ordered that the Petition for Rehearing be denied. However, Opinion Number 2958, filed March 15, 1999, is withdrawn and the attached opinion is substituted.

HEARN, Judge:

In this workers' compensation case, Dennis Randall Hendricks, the employee, appeals from a circuit court order that substantially affirmed the findings of the Full Commission. We reverse and remand to the Full Commission.

## FACTS

Hendricks, a paramedic employed by Pickens County for fourteen years, injured his back and left leg on February 21, 1995, when he stepped into a hole while on an evening emergency call. Hendricks was carrying medical equipment weighing approximately 150 pounds at the time of the incident.

Hendricks filed a Form 50 on March 30, 1995. On April 11, 1995, Hendricks's vertebrae at L5–S1 were fused. At the same time, he underwent an L4–5 laminectomy and foraminotomy, and L5–S1 foraminotomy to his spine. On May 1, 1995, Respondents filed a Form 51, contending there was no injury by accident and refusing to pay for any of Hendricks's medical treatment.

A hearing was held on November 30, 1995, before a commissioner who found that Hendricks had suffered an injury to his back and left leg. The commissioner found Hendricks had reached maximum medical improvement (MMI) with regard to his back on July 25, 1995, but had not reached MMI with regard to his left knee. The commissioner further ordered

that Respondents were liable for all medical expenses causally related to the February 21, 1995, injury until such time as Hendricks reached MMI.

On April 15, 1996, Respondents filed an application to stop payment of Hendricks's temporary total disability (TTD) benefits, alleging he had reached MMI. Following a hearing, the commissioner issued an order finding that Hendricks had reached MMI with regard to his left knee on December 11, 1995, and that he had a 20% impairment to the left leg and a 19% impairment to the back. The commissioner also found Respondents were entitled to a credit for all TTD benefits paid after April 15, 1996, the date they filed their stop payment request. Both parties requested review by the Full Commission.

The Full Commission modified the single commissioner's order in two ways: first, it increased the permanent impairment to Hendricks's back to 40%, and second, it awarded Respondents a credit for all TTD compensation paid after December 11, 1995, the date Hendricks reached MMI. In all other respects, the Full Commission affirmed the single commissioner's order.

Both sides appealed to the Pickens County Circuit Court. The circuit court judge affirmed the Full Commission's decision except for the 40% impairment rating to Hendricks's back. Finding there was no substantial, reliable, or probative evidence to support the 40% impairment, the circuit court reinstated the single commissioner's award of 19% permanent disability to the back. Hendricks appeals.

## STANDARD OF REVIEW

The duty to determine facts is placed solely on the commission. The court reviewing the commission's decision has no authority to determine factual issues but must remand the matter to the commission for further proceedings. *Fox v. Newberry County Mem'l Hosp.*, 319 S.C. 278, 280, 461 S.E.2d 392, 394 (1995). On appeal from the commission, this court may not substitute its judgment for the commission's as to the weight of evidence on questions of fact, but may reverse when the decision is affected by an error of law. *Stephen v. Avins Constr. Co.*, 324 S.C. 334, 337, 478 S.E.2d 74, 76 (Ct.App.1996).

The appellate court's review is limited to deciding whether the commission's decision is unsupported by substantial evidence or is controlled by some error of law. *See Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981); *Rogers v. Kunja Knitting Mills, Inc.*, 312 S.C. 377, 381, 440 S.E.2d 401, 403 (Ct.App.1994).

## DISCUSSION

Hendricks raises eleven issues on appeal. They can be fairly summarized as follows:

1. Whether the circuit court erred in affirming the commission's decision to not award compensation under the general disability statutes?

2. Whether the circuit court erred in reinstating the single commissioner's finding of a 19% impairment to Hendricks's back?

3. Whether the circuit court erred in affirming the commission's order granting Respondents a credit for any TTD payments made after Hendricks reached MMI?

4. Whether the circuit court erred in concluding that Respondents were not liable for medical treatment for Hendricks's back after he reached MMI?

5. Whether the circuit court erred in affirming the commission's award under South Carolina Code section 42–9–30 when the commission did not review the videotapes admitted into evidence before the single commissioner?

I. *General disability compensation versus scheduled member*

■ Hendricks argues he was qualified to receive disability compensation under the general disability statutes, South Carolina Code sections 42–9–10 and 42–9–20 (1976 & Supp. 1998). He contends the commission failed to make sufficient findings of fact concerning his entitlement to general disability benefits and that the case should be remanded for further findings in this regard. We agree this issue should be remanded.

■ Hendricks clearly asserted his entitlement to general disability compensation before the single commissioner. "[A]

claimant may proceed under § 42–9–10 or § 42–9–20 to prove a general disability; alternatively, he or she may proceed under § 42–9–30 to prove a loss, or loss of use of, a member, organ, or part of the body for which specific awards are listed in the statute." *Fields v. Owens Corning Fiberglas*, 301 S.C. 554, 555, 393 S.E.2d 172, 173 (1990). Nevertheless, the commissioner's order does not address this issue.[1] Hendricks also raised this issue before the Full Commission and before the circuit court.

The Full Commission affirmed the order of the single commissioner in all respects except that it increased the permanent disability compensation for injuries to Hendricks's back from 19% to 40%; however, it did not analyze whether Hendricks was entitled to total or partial permanent disability benefits under section 42–9–10 or section 42–9–20. This was error. *See Morgan v. JPS Automotives*, 321 S.C. 2012, 2014–15, 467 S.E.2d 457, 459 (Ct.App.1996) (Where the single commissioner failed to make any findings regarding appellant's claim that her disability extended beyond the disability to the scheduled member, the case was remanded to the commission for specific findings of fact on that issue.), *cert. dismissed as improvidently granted*, 326 S.C. 261, 486 S.E.2d 263 (1997); *see, e.g., Gilliam v. Woodside Mills*, 319 S.C. 385, 461 S.E.2d 818 (1995) (holding case should have been remanded to commission to address claimant's eligibility for an award under sections 42–9–10 and 42–9–20 when substantial evidence showed injury not confined to scheduled member). Accordingly, we remand this issue to the commission for specific findings as to whether Hendricks's disability extends beyond the disabilities to the scheduled members.

II. *Reinstatement of single commissioner's finding of a 19% impairment to the back*

■ Hendricks contends the circuit court erred in reinstating the single commissioner's finding of a 19% impairment to Hendricks's back rather than affirming the commission's find-

---

1. At oral argument, counsel for Respondents contended the following sentence in the single commissioner's order denied Hendricks's claim for general disability compensation: "That claimant's temporary disability ended on December 11, 1995." We do not read this sentence as addressing the general disability issue.

ing of a 40% back impairment. We find there was substantial evidence in the record to support the commission's conclusion. Therefore, it was error for the circuit court judge to substitute his findings of fact on this issue for those found by the commission. *See Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981); *Rogers v. Kunja Knitting Mills, Inc.,* 312 S.C. 377, 381, 440 S.E.2d 401, 403 (Ct.App.1994). We reverse and reinstate the commission's finding of a 40% impairment, subject to the commission's decision to award Hendricks total or partial disability benefits under the general disability versus scheduled member statutes.

III. *Propriety of credit to Respondents for TTD benefits paid after date of MMI*

■ Hendricks argues it was error to grant Respondents a credit for temporary disability benefits paid during the period between his reaching MMI on December 11, 1995, and the commission's order dated October 23, 1996. Hendricks contends he remained totally disabled and unable to work, arguing a finding of MMI does not establish an end to his disability or to his entitlement to benefits. We find no error.

The first single commissioner's order, dated February 26, 1996, found Hendricks reached MMI with regard to his back on July 25, 1995, but found the employer liable for continuing TTD payments until Hendricks reached MMI for all injuries arising from his work-related accident. This unappealed order is the law of this case. *Smith v. South Carolina Dept. of Mental Health,* 329 S.C. 485, 502 n. 9, 494 S.E.2d 630, 639 n. 9 (Ct.App.1997) (" '[A]ll findings of fact and law by the Hearing Commissioner became and are the law of [the] case, except only those within the scope of the exception of defendant and the notice given to the parties by the Commission....' " (quoting *Ham v. Mullins Lumber Co.,* 193 S.C. 66, 74, 7 S.E.2d 712, 716 (1940))), *cert. granted,* (Oct. 7, 1998).

The second single commissioner's order, dated October 14, 1996, found that Hendricks reached MMI with regard to his left knee on December 11, 1995, and that his eligibility for temporary disability benefits ended as of that date. These findings were affirmed by the commission, which amended the single commissioner's order to grant Respondents a credit for

any TTD compensation paid after December 11, 1995, the final MMI date.

■ Once the commission affirmed that Hendricks had reached MMI, it was then appropriate to terminate TTD benefits in favor of either permanent partial or permanent total disability benefits, if warranted by substantial evidence in the record. *O'Banner v. Westinghouse Elec. Corp.*, 319 S.C. 24, 27–8, 459 S.E.2d 324, 326 (Ct.App.1995) (explaining that under Regulation 67–507, an employer successfully rebuts the presumption a claimant is still entitled to TTD benefits by producing a certificate of MMI); *see* S.C.Code Ann. §§ 42–9–10, –20, –30; *Williams v. South Carolina Dep't of Mental Retardation*, 308 S.C. 438, 440, 418 S.E.2d 555, 557 (Ct.App. 1992) (remanding to commission to redetermine date of MMI and to recalculate TTD benefits based upon the new MMI date). Similarly, it was then appropriate for the commission to determine whether to provide a credit to the employer and carrier pursuant to South Carolina Code section 42–9–210 (1985).

■ In arguing that the credit his employer received was erroneous, Hendricks relies on *Swinton v. South Carolina Dep't of Mental Health*, 314 S.C. 202, 442 S.E.2d 215 (Ct.App. 1994), for the proposition that a claimant's total disability is presumed to continue when he is unable to return to work because of an injury, and in such a case a credit is not warranted.[2] We do not find *Swinton* controlling because it

---

2. We take this opportunity to clarify the difference between permanent disability payments and temporary disability payments. The concepts of MMI and permanent impairment are not mutually exclusive. Simply because a claimant suffers a permanent impairment does not preclude him from reaching MMI. *Smith v. South Carolina Dep't of Mental Health*, 329 S.C. 485, 495, 494 S.E.2d 630, 635 (Ct.App.1997), *citing Swinton*, 314 S.C. 202, 442 S.E.2d 215. Consequently, terminating *temporary* total disability payments does not prevent a claimant from receiving *permanent* total disability payments.

Essentially, worker's compensation benefits accrue along a time continuum: TTD benefits are available from the date of injury through the date of MMI and post-MMI benefits may be awarded either as a permanent total or partial disability, or as a percentage of impairment to a scheduled member. *See* S.C.Code Ann. §§ 42–9–10, –20, –30 (1976); S.C.Code Ann. § 42–9–260 (1996); 25A S.C.Code Ann.Regs. 67–507 (1990) (repealed by 21 S.C.Reg., No. 6, Part 2 at 439, effective

was a case where the employer unilaterally suspended TTD payments under former Regulation 67–504, which clearly required proof not only of MMI but also that the employee was capable of returning to work without restriction. *Id.* at 203, 442 S.E.2d at 216; 25A S.C.Code Ann.Reg. 67–504(B) (1990) (later amended by 21 S.C.Reg., No. 4 at 87–8, effective April 25, 1997); *see also Grayson v. Carter Rhoad Furniture,* 317 S.C. 306, 310, 454 S.E.2d 320, 322 (1995) (An employer seeking to terminate TTD benefits pursuant to Regulation 67–504 must provide clear proof of the employee's ability to return to work without restriction.). Because there was no showing in *Swinton* that the claimant was able to return to work without restriction, it was inappropriate in that case to award a credit for TTD benefits paid after the date of MMI. *Swinton,* 314 S.C. at 203–4, 442 S.E.2d at 216; *see* 25A S.C.Code Ann.Reg. 67–504(C) (1990) (once employee has reached MMI *and* returned to work for 15 consecutive days, disability is presumptively over); 25A S.C.Code Ann.Reg. 67–504(F)(2) (1990) (by signing a Form 17 to terminate TTD, employee agrees the benefits cease as of the day of return to work).

Hendricks's case, on the other hand, is governed by former Regulation 67–507, under which an employer could petition the commission for permission to terminate TTD based only upon MMI; no further showing that the employee was able to return to work without restriction was required. 25A S.C.Code Ann.Regs. 67–507(C)(3)(a) (1990) (repealed by 21 S.C.Reg., No. 6, Part 2 at 439, effective June 27, 1997); *O'Banner v. Westinghouse Elec. Corp.,* 319 S.C. 24, 27–8, 459 S.E.2d 324, 326 (Ct.App.1995) (rejecting notion that employer must provide proof of employee's ability to return to work before terminating TTD benefits under regulation 67–507). Regulation 67–507(B) clearly envisioned that a disability could continue past the date of MMI, but significantly, contained no presumptive date when the TTD benefits were deemed ended.

---

June 27, 1997); *O'Banner v. Westinghouse,* 319 S.C. 24, 27–8, 459 S.E.2d 324, 326 (Ct.App.1995). To require an employer to prove a claimant's disability ended before terminating TTD benefits dilutes the distinction between temporary and permanent disability payments, and it dilutes MMI as the definitive moment when a transition between the two different types of payments is accomplished.

Finally, by not appealing the first single commissioner's order, Hendricks tacitly agreed to terminate his TTD benefits as of his last MMI date. Thus, we find no error in the commission's decision to credit Respondents with TTD benefits paid after that date.

IV. *Payment of medical treatment until Hendricks reached MMI*

Hendricks also contends Respondents should pay for medical treatment for his back until he reached MMI for both his injury to his back and to his leg. We disagree.

In her order dated February 29, 1996, the single commissioner stated: "Under Section 42-15-60, S.C.Code Ann. (1976), defendants are liable for all medical expenses causally related to claimant's injuries of February 21, 1995 until such time as he reaches maximum medical improvement." This unappealed order is the law of this case. *Smith v. South Carolina Dep't of Mental Health,* 329 S.C. 485, 502 n. 9, 494 S.E.2d 630, 639 n. 9 (Ct.App.1997).

Hendricks argues that because he still suffered a disability to his back regardless of a finding of MMI on July 25, 1995, his employer should pay for all treatment costs for his back through December 11, 1995. Hendricks contends that although the commissioner determined he had reached MMI to his back prior to reaching MMI to his knee, her order should be construed to include *all* medical expenses paid for both his knee and his back through the *final* MMI date.

In an appropriate case, this argument may have merit; here, however there is no evidence in the record that any of Hendricks's back treatments between the two MMI dates were undertaken to lessen the period of disability. S.C.Code Ann. § 42-15-60 (1976) (commission could find employer responsible for paying for ongoing treatment beyond the first ten weeks of disability, provided such treatment was intended to lessen the degree of permanent impairment, or lessen the period of disability). In fact, the second single commissioner's order was incorporated by reference into the commission's order, including finding of fact number sixteen: "That further medical treatment will not lessen claimant's disability." Thus, Respondents were liable for all authorized medical expenses

related to these injuries only through their respective MMI dates.

## V.  *Viewing of the videotapes*

■■■ At the hearing before the single commissioner, investigator John D. Tuck testified for Respondents.  Tuck conducted surveillance by videotaping Hendricks on March 18–19, 1996, and July 5, 1996.  Tuck testified he observed occasions where Hendricks was limping and holding or rubbing his back.  However, he stated this was not on the videotape.  The commissioner informed counsel for both parties in advance of the hearing that they each could show only three minutes of the videotape.  The following discussion took place at the hearing:

Mr. Kale:  Your Honor, we at this time would like to move for the introduction of the surveillance video and play it for you.

The Court:  Any objection, Mr. Turnage?

Mr. Turnage:  Well, I haven't seen what they're going to do. I don't know which portion they have identified.  Will I have an opportunity to have him go over other portions of the tape?  I don't know what they have selected.  They didn't provide—

The Court:  Have you seen the entire videotape?

Mr. Turnage:  I've seen the whole thing.

The Court:  So there is nothing in there that you have not seen?

Mr. Turnage:  Right.  We have not seen.

The Court:  Then what is your objection?

Mr. Turnage:  Because I haven't seen what they're going to show.

The Court:  You have.  You just haven't seen it narrowed down.

Mr. Turnage:  Well, if I'll have an opportunity to show other portions of the tape, then I will—

The Court:  Did you list videotape as something that you were going to show?

Mr. Turnage: No, Ma'am, but we also received two huge video disks. And if he is going to introduce portions of those videotapes, we ought to be able to—

The Court: It is my understanding that he is going to introduce the entire videotape, but during a hearing, I'll only watch three minutes.

Mr. Turnage: Are you going to review the entire film?

The Court: No. He retains possession of it.

Mr. Turnage: Well, we have a copy and we would like to put the whole thing in the record.

The Court: The whole thing is going to be put in record, but whoever puts it in retains possession. We don't retain possession of it.

Counsel for Respondents played three minutes of the video. The video showed Hendricks driving a tractor, driving his sports utility vehicle, carrying one of his children under his arm, bending and stooping, lifting gallon jugs of milk, and stepping over a plywood board. Hendricks's attorney did not show any video footage during the hearing.

Hendricks does not contend that the single commissioner erred in refusing to allow the parties to play more than three minutes of the video. Thus, the propriety of the single commissioner's decision to limit each side to three minutes is not before us. Instead, Hendricks maintains the commission should have reviewed the video tapes because the tapes were admitted into the record as evidence. According to Hendricks, the commission, as the ultimate fact finder, was duty bound to view the tapes as part of the whole record. The case law and statutory authority support this position. *See* S.C.Code Ann. § 1-23-380(A)(6) (that appellate court cannot substitute its judgment for the commission's on issues of fact implies record must contain findings of fact to review); *see also Smith v. South Carolina Dep't of Mental Health,* 329 S.C. 485, 498, 494 S.E.2d 630, 636-7 (1997) (finding commissioner erred by admitting irrelevant testimony, but then refusing to continue hearing to elicit relevant testimony; commissioner allowed attorneys to proffer their evidence, but refused to consider it).

Section 1-23-320 of the Administrative Procedures Act provides in part:

(a) In a contested case, all parties must be afforded an opportunity for hearing after notice of not less than thirty days....

. . .

(e) Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved.

. . .

(g) The record in a contested case shall include:

(1) all pleadings, motions, intermediate rulings and depositions;

(2) *evidence received or considered;*

(3) a statement of matters officially noticed;

(4) questions and offers of proof, objections and rulings thereon;

(5) proposed findings and exceptions;

(6) any decision, opinion or report by the officer or administrative law judge presiding at the hearing.

. . .

(i) *Findings of fact shall be based exclusively on the evidence* and on matters officially noticed.

S.C.Code Ann. § 1–23–320 (1976 & Supp.1998) (emphasis added). Section 1–23–330 provides: "(1) In contested cases: Irrelevant, immaterial or unduly repetitious evidence shall be excluded. Except in proceedings before the Industrial Commission the rules of evidence as applied in civil cases in the court of common pleas shall be followed." S.C.Code Ann. § 1–23–330 (1976 & Supp.1998).

Because the evidence regarding the extent of Hendricks's disability was in substantial conflict, the entire videotape cannot be deemed irrelevant, immaterial, or unduly repetitious of the other evidence presented. The entire videotape was admitted into evidence by the single commissioner. The commissioner made specific reference to the videotape in her findings with respect to the extent of Hendricks's impairment. While the Full Commission is empowered to reach findings of fact and conclusions of law consistent or inconsistent with those of the commissioner, *McGuffin v. Schlumberger–Sangamo,* 307 S.C. 184, 186, 414 S.E.2d 162, 163 (1992), the commission must, in keeping with section 1–23–320, consider the

evidence received before the single commissioner. Accordingly, once the videotape was in evidence, the Full Commission should have considered it.

## CONCLUSION

We affirm the circuit court and the commission with respect to Hendricks reaching MMI for his back on July 25, 1995, and for his knee on December 11, 1995. We also affirm the Respondents' receipt of a credit for any TTD benefits paid after the final MMI date and affirm the finding pursuant to section 42–15–60 that Respondents are not liable for Hendricks's medical treatment for his back after July 25, 1995. We reverse and reinstate the Full Commission's finding of a 40% impairment to Hendricks's back. We remand to the Full Commission the issue of Hendricks's potential entitlement to compensation under the general disability statutes, and we direct the commission to consider all the evidence in the record when developing its findings of fact regarding this remanded issue.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

CONNOR and HUFF, JJ., concur.