THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED 
 ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
 In The Court of Appeals

 
 
 
 
 Kenneth L. Thigpen, Employee/Claimant, Appellant,
 
 
 

v.
 
 
 
 
 Baker Homes, Inc., Self-Insured Employer, through the S.C. Home Builders 
 SIF, Respondent.
 
 
 

Appeal From Charleston County
  R. Markley Dennis, Jr., Circuit Court Judge

Unpublished Opinion No. 2004-UP-370
 Submitted June 8, 2004  Filed June 15, 2004

AFFIRMED

 
 
 
 
 Kenneth L. Thigpen, Jr., Pro se, for Appellant. 
 John Steven Rodenberg and Kirsten Leslie Barr, both of Mt. Pleasant, 
 for Respondent.
 
 
 

PER CURIAM:  Kenneth L. Thigpen appeals an order of the circuit court 
 affirming the decision of an appellate panel of the Workers Compensation Commission 
 denying his claim for compensation.  We affirm.
FACTS
Kenneth Thigpen was employed by Baker Homes on January 6, 2000, to disassemble 
 a house.  While on the site, a large overhead beam fell and Thigpen reacted 
 by attempting to catch or block the beam.  After seeing a chiropractor, he sought 
 the medical attention of Dr. James Aymond.  Dr. Aymond indicated Thigpen complained 
 of lower back pain and posterior thigh pain.  He recommended Thigpen undergo 
 an MRI, which later revealed a paracentral disc herniation.  Thigpen continued 
 to be seen for treatment of his lower back and underwent physical therapy.
On May 11, 2000, Dr. Aymond indicated that Thigpen was able to lift weights 
 up to 60 pounds and recommended he undergo a functional capacity evaluation.  
 At his next visit on May 25, 2000, Thigpen was found to be able to lift within 
 a physical demand of medium.  He was placed on a weight restriction of 50 pounds.  
 Dr. Aymond also found Thigpen had reached Maximum Medical Improvement (MMI) 
 and assigned an 8% impairment rating to his spine. 
In April 2000, Thigpen was involved in a non work-related automobile accident.  
 In October 2000, he returned to Dr. Aymond, complaining of pain in his hip and 
 groin.  Thigpen was referred to Dr. McCrosson for evaluation.  After an MRI, 
 it was determined that Thigpen had right femoral head osteonecrosis. 
 [1]   The main treatment plan was to perform a core depression of the hip.  
 Following a delay in treatment, the femoral head collapsed, requiring Thigpen 
 to undergo a hip replacement.  
After filing for compensation benefits, the single commissioner found that 
 the spinal injury was compensable, that there was no compensable injury to Thigpens 
 hip, and that Thigpen reached MMI on May 25, 2000.  In addition, the commissioner 
 found Thigpen was not entitled to temporary total disability benefits between 
 May 25 and September 8, 2000, and Baker Homes was entitled to a credit towards 
 the amount of permanent disability owed for the payments made to Thigpen between 
 May 25 and September 8, 2000.  
An Appellate Panel of the Workers Compensation Commission (Commission) affirmed 
 the commissioners findings and awarded Thigpen $27,396.36 in permanent partial 
 disability for an 18% disability to his spine.  The amount was offset by the 
 payments made between May 25 and September 8, 2000.  The Commission reaffirmed 
 the finding that the femoral head osteonecrosis was not a compensable injury 
 related to the January 6, 2000 accident.  The circuit court affirmed and determined 
 there was substantial evidence to support the decision of the Commission.  This 
 appeal follows.
STANDARD OF REVIEW
The Administrative Procedures Act establishes the standard 
 of review for decisions by the South Carolina Workers Compensation Commission 
 as the substantial evidence standard.  Lark v. Bi-Lo, Inc., 276 S.C. 
 130, 134-35, 276 S.E.2d 304, 306 (1981).  Substantial evidence is not a mere 
 scintilla of evidence nor evidence viewed from one side, but such evidence, 
 when the whole record is considered, as would allow reasonable minds to reach 
 the conclusion the Full Commission reached.  Shealy v. Aiken County, 
 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000).  In workers compensation cases, 
 the Full Commission is the ultimate fact finder.  Id.  
In an appeal from the Commission, this court may not substitute 
 its judgment for that of the Commission as to the weight of the evidence on 
 questions of fact.  S.C. Code Ann. § 1-23-380(A)(6) (Supp. 2003).  The appellate 
 court can reverse or modify the Commissions decision only if the claimants 
 substantial rights have been prejudiced because the decision is affected by 
 an error of law or is clearly erroneous in view of the reliable, probative, 
 and substantial evidence on the whole record.  Id.   
DISCUSSION
Thigpen raises a total of ten issues in his pro se brief.  However 
 only three issues were properly presented to the circuit court.  Any issue raised 
 to this court must previously been raised to and ruled upon by the commission 
 and the circuit court. [2]   See Pratt v. Morris Roofing, Inc., 
 353 S.C. 339, 352, 577 S.E.2d 475, 481-82 (Ct. App. 2003) (noting that an issue 
 cannot be raised for the first time on appeal, but must have been raised to 
 and ruled upon by the trial court).    
Therefore, the only issues that are properly preserved 
 for our review are the three that were ruled upon by the Commission and presented 
 for appellate review to the circuit court.  See Rodney v. Michelin 
 Tire Corp., 320 S.C. 515, 517, 466 S.E.2d 357, 358 (1996) (Arguments not 
 raised to the workers compensation commission or to the circuit court are not 
 preserved for appeal.).  The three issues which are preserved for our review 
 include whether the Commission properly determined:  1) the femoral head osteonecrosis 
 was not causally related to the January 2000 accident; 2) Thigpen reached MMI 
 as to his spinal injury in May 2000 and is not entitled to any further medical 
 treatment for his hip or his spine; and 3) Thigpen was not entitled to temporary 
 total disability payments from May 25, 2000 through September 8, 2000, and Respondent 
 is entitled to a credit for these payments against the amount of permanent partial 
 disability it is required to pay.   
I.  Coverage for the Hip Injury
Thigpen contends the Commission erred in finding he was not entitled to compensation 
 benefits for his alleged hip injury.  He maintains the evidence indicates the 
 injury was an injury by accident sustained during the course of his employment.  
 We find there is evidence in the record to support the Commissions determination 
 that the hip injury was not causally related to the January 2000 accident.
Dr. Aymonds medical notes indicate Thigpen complained of lower back pain, 
 which radiated through his thighs.  Throughout several months of visits with 
 Dr. Aymond for follow-up and treatment, there is no mention in the medical records 
 of a complaint of hip pain.  Thigpen did not complain of pain in the hip or 
 the groin until October of 2000.  In a letter regarding his treatment of Thigpen, 
 Dr. Aymond explained:

 In my experience, avascular necrosis from trauma is only suspected after 
 a severe pelvic injury, such as a hip dislocation that disrupts the blood 
 supply to the femoral head.  There are other nontraumatic reasons for avascular 
 necrosis, but these by definition do not involve any trauma in my experience.
 Therefore, in my opinion to a reasonable degree of medical certainty, Mr. 
 Thigpens avascular necrosis of his right hip is not related to his work-related 
 injury in January of 2000.  

Thigpen was referred to Dr. McCrosson for evaluation of the 
 hip.  Dr. McCrosson initially indicated the femoral head osteonecrosis might 
 have been related to Thigpens work injury on January 6, 2000.  However, he 
 later indicated:  At this time I feel that there are too many factors confounding 
 the issue and that it is impossible to say with any medical certainty what the 
 cause of Mr. Thigpens avascular necrosis is.  Dr. Rustin, who also saw Thigpen 
 for his hip injury, stated, it is impossible for me to attribute the probability 
 of the cause of his avascular necrosis to his workers comp event.  
We find that substantial evidence exists in the record to support the finding 
 of the Commission that Thigpens injury is not the result of an injury by accident 
 arising out of and in the course of his employment. 
II. Entitlement to Benefits Beyond May 25, 2000
Thigpen asserts that he should be entitled to compensation and continued medical 
 care for his femoral head osteonecrosis.  As we have determined above, Thigpens 
 hip injury is not causally related to the January 2000 accident.  Accordingly, 
 he is not entitled to continued medical care for his hip.
We construe a portion of Thigpens argument as questioning the finding that 
 he reached maximum medical improvement (MMI) as to his compensable injury.  
 Maximum medical improvement is a term used to indicate that a person has reached 
 such a plateau that in the physicians opinion there is no further medical care 
 or treatment which will lessen the degree of impairment.  OBanner v. Westinghouse 
 Elec. Corp., 319 S.C. 24, 28, 459 S.E.2d 324, 327 (Ct. App. 1995).  The 
 Commission must make a factual determination of whether the claimant has reached 
 MMI.  See id.  This Court would only reverse the finding of the 
 Commission if it is unsupported by substantial evidence.  See Shealy, 
 341 S.C. at 455, 535 S.E.2d at 442.
In this case, Dr. Aymond indicated in a medical record dated May 25, 2000: 
  I believe the patient has reached [MMI] and has an impairment of 8% impairment 
 of the spine.  We will plan to see him in follow-up as needed.  While Thigpen 
 does not specifically challenge the finding that he reached MMI as to his spinal 
 injury, the above documentation provides support for the Commissions finding.  
 Accordingly, the determination that Thigpen reached MMI on May 25, 2000 and 
 is not entitled to further temporary total disability benefits is supported 
 by substantial evidence.  
III. Benefits Between May and September 2000
Thigpen contends the Commission erred in determining that he was not entitled 
 to benefits from May 25 to September 8, 2000.  We disagree.  
Workers compensation awards have generally provided 
 for temporary total disability benefits until maximum medical improvement, at 
 which point a claimant receives permanent partial disability if warranted.  
 OBanner, 319 S.C. at 28, 459 S.E.2d at 326.  The Commission must make 
 a factual determination of whether the claimant has reached MMI, and therefore, 
 the employer would no longer be liable for temporary total disability compensation.
Dr. Aymond found Thigpen reached MMI on May 25, 2000, and assigned 8% impairment 
 to the spine.  Baker Homes continued to pay Thigpen temporary total disability 
 compensation until September 8, 2000, when the payments were stopped after Baker 
 Homes received videotaped evidence that Thigpen was able to work.  The surveillance 
 records detailing the videotape indicate that on September 8, 2000, Thigpen 
 was seen lifting vinyl siding, using tools, climbing a ladder, and bending over 
 while working at a job site.  
As we have determined the Commission correctly 
 found Thigpen reached MMI by May 25, 2000, it also correctly determined he was 
 then entitled to permanent partial disability and not temporary total disability.  
 The Commission awarded Thigpen 18% disability to the spine and required permanent 
 partial disability compensation of $27,396.36. 
We find the decision denying Thigpen temporary total disability benefits 
from May 25 to September 8, 2000 was supported by substantial evidence.  In addition, 
Baker Homes is entitled to a credit for the amount of temporary total disability 
payments made to Thigpen during this period of time.   
CONCLUSION
Most of the issues raised by Thigpen attempt to relitigate issues which were 
 abandoned after an adverse decision by the single commissioner and later the 
 Commission.  Accordingly, these issues were not preserved for our review on 
 appeal.  We find there is substantial evidence to support the Commissions findings 
 that the femoral head osteonecrosis was not compensable, that Thigpen had reached 
 MMI on May 25, 2000 and was not entitled to additional temporary total disability 
 benefits, and that Baker Homes was entitled to a credit for benefits paid between 
 May 25 and September 8, 2000.  Accordingly, the decision of the circuit court 
 is
AFFIRMED.
ANDERSON, HUFF, and KITTREDGE, JJ., concur.  

 
 [1] This is also referred to in the record as avascular 
 necrosis or AVN.

 
 
 [2]   We note that Thigpen has failed to follow the South Carolina Appellate 
 Court Rules in his filings with this court.  His brief is conclusory and contains 
 no supporting authority for his positions.  See First Sav. Bank 
 v. McLean, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994); Solomon v. 
 City Realty Co., 262 S.C. 198, 201, 203 S.E.2d 435, 436 (1974).