18301

Barbara H. RHODES and Jean Lorraine Rhodes, Appellants, v. GUIGNARD BRICK WORKS and Employers Mutual Liability Insurance Company of Wausau, Respondents.

(140 S. E. (2d) 487)

*Ryan L. Scott, Esq.,* of Columbia, *for Appellants,* 

*Messrs. Robinson, McFaddin & Moore,* of Columbia, *for Respondents,*

February 9, 1965.

LEWIS, Justice.

This claim for benefits under the Workmen's Compensation Act arose out of the death of James David Rhodes from a heart attack while about his duties as an employee of Guignard Brick Works. The South Carolina Industrial Commission denied the claim upon a finding that the employee's death did not result from an accident arising out of his employment. The circuit court affirmed this finding by the Commission as having competent evidentiary support in the record, and claimants have appealed. Whether there was such evidentiary support for the Commission's decision is the basic question to be determined in this appeal. Before reaching this question, however, there is a preliminary issue that must be decided.

The "Opinion and Award" of the Commission, under its "Findings of Fact," stated: "It is found as a fact that James David Rhodes did not die as the result of an accident arising out of his employment, within the meaning of the South Carolina Workmen's Compensation Law." This finding was preceded by a review of the testimony and was followed by "Conclusions of Law," under which the Commission stated the controlling facts and legal principles governing its decision. The claimants take the position that the quoted finding by the Commission was a conclusion of law, not a finding of fact, and therefore not binding on appeal.

In determining whether a specific finding in an order of the Industrial Commission is one of law or fact, such finding must be construed in connection with the entire order in the light of the issues to be decided.

We have held that "a conclusion by the Industrial Commission by way of reasonable inference from the evidence is a finding of fact." *Windham v. City of Florence,* 221 S. C. 350, 70 S. E. (2d) 553.

The contention of claimants that the foregoing was a conclusion of law and not a finding of fact is without merit. Since it was conceded that the deceased was about the duties of his employment when he suffered the fatal heart attack, the basic factual issue before the Commission was whether there was any causal connection between the employment and the heart attack, that is, whether the heart attack constituted an accident arising out of the employment. The finding by the Commission that the employee "did not die as a result of an accident arising out of his employment, within the meaning of the Workmen's Compensation Law" was a conclusion of fact based upon the inferences which the Commission drew from the testimony. That was the factual issue which the Commission, of necessity, had to decide and did decide by the foregoing finding. This was not a conclusion of law. It was a finding of fact, *Murdaugh v. Robert Lee Construction Co.*, 185 S. C. 497, 194 S. E. 447; and, as such, is conclusive and binding on appeal, if supported by any competent evidence. *Black v. Barnwell County*, 243 S. C. 531, 134 S. E. (2d) 753.

Therefore, the issue to be determined is whether there was any competent evidence to support the factual finding by the Commission that there was no causal connection between the employment of the deceased and his fatal heart attack.

The general legal principles which govern the determination here of whether the employee's heart attack constituted a compensable accident within the meaning of the Workmen's Compensation Act, as established by our prior decisions, were restated in the recent case of *Black v. Barnwell County, supra*, 243 S. C. 531, 134 S. E. (2d) 753, from which we quote:

"The general rule has been adopted in this State that a coronary attack suffered by an employee constitutes a compensable accident within the meaning of the Workmen's Compensation Act if it is induced by unexpected strain or over-exertion in the performance of the duties of his employ-

ment, or by unusual and extraordinary conditions in the employment. *Kearse v. South Carolina Wildlife Resources Department,* 236 S. C. 540, 115 S. E. (2d) 183. It has also been held, as stated in *Walsh v. United States Rubber Co.,* 238 S. C. 411, 120 S. E. (2d) 685, that 'if a heart attack results as a consequence of the ordinary exertion that is required in the performance of the duties of the employment in the ordinary and usual manner, and without any outward untoward event, it is not compensable as an accident. The fact that due to a weakened heart condition, the exertion required for the ordinary performance of the work is too great for the particular employee, who undertakes to perform it, does not make it a compensable accident. *Sims v. South Carolina State Commission of Forestry,* 235 S. C. 1, 109 S. E. (2d) 701.' "

The Claimants contend the evidence conclusively showed that the employee's heart attack was induced by over-exertion, or by the unusual and extraordinary conditions in the employment, in that he was required (1) to work unusually long hours during the two week period preceding the heart attack, (2) to drive unusually long distances on the day of his death, and (3) to operate the truck on the day of his death in unusually cold weather and heavy traffic conditions for a long period of time.

The deceased was employed on February 18, 1963, the date of his death, by Guignard Brick Works as a truck driver and had been so employed for a period of approximately nine and one-half (9½) years. His duties consisted of driving a large dump truck between the defendant's mines and plant located near Columbia, South Carolina. He was engaged in operating this truck, hauling clay, from one of the mines to the company plant, a distance of approximately twenty miles one way, on the day of his death. The deceased reported to work at 7:00 o'clock, a. m., on the day in question and about 4:30 p. m., while driving his loaded truck near the City of Columbia on his way from the mine to the plant, he was suddenly stricken with a heart attack. Follow-

ing the attack, his truck left the highway and ran into a ditch on the opposite side of the road. He died a few minutes later. His vehicle was in good mechanical condition, no other vehicle was involved, he showed no external injury, and the truck was later driven away under its own power.

The deceased was 53 years of age at the time of his death. He had suffered from a coronary disease for several years and had been under the care of a physician since 1957. He was hospitalized for this condition on several occasions —twice in 1962, after which he was paid group hospital benefits on the basis that these attacks were not the result of his employment. On January 24, 1963, he was again hospitalized for his heart condition and was discharged on January 27, 1963, returning to work approximately two weeks prior to his death. The occasion for the last admission to the hospital was exposure to cold after which he felt severe anterior chest pain and shortness of breath. The immediate cause of death was given as a ruptured atheromatous plaque and the underlying disease as coronary atherosclerosis.

On the day in question, the truck driven by the deceased was one of four operated on the same haul. The four operators used the same route in order to help each other if trouble developed. The route used was partly over U. S. Highway No. 1 and the traffic was admittedly heavy. There was a nearer way from the mine to the plant, but this would have involved negotiating heavy Fort Jackson and in-town traffic and presumably, this was the reason for the selection of the longer route. The mine from which the hauls were being made was one of three operated by the defendant. The distance from this mine to the plant was apparently farther than from the other two. However, the normal duties of the deceased consisted of hauling from either mine as the defendant's business demanded; and there is nothing to indicate that the deceased was required to operate from it during the period in question other than in the normal course of business.

In the operation of the truck, the deceased would drive it into position at the mine and an employee stationed there would load it. He could stay in the truck throughout the loading operation if he desired. A circular ramp was used at the mine so that backing of the truck into position to load was unnecessary. In unloading the truck at the plant he would dismount, unlatch the tailgate by hand, remount, and dump the load by operating the power takeoff from the cab. After the load is dumped, the driver dismounts and relatches the tailgate before making another trip. This was the normal operation in loading and unloading the truck operated by the deceased and there is no testimony that he was performing the work in other than the normal fashion on the day of his death. Two fellow truck drivers, one weighing 115 pounds and the other 130, testified that they were driving the same type trucks on the same haul and had no difficulty in handling the vehicles.

There was testimony that the day in question was a cold day, with a low temperature of 17 degrees and a high of 57 degrees; and that the month of February was the coldest in several years. However, the cab of the truck operated by the deceased was heated and, but for the brief intervals when he would have to dismount to unlatch and relatch the tailgate in the unloading operation, his work permitted him to remain in the heated cab.

There was introduced in evidence the work record of the deceased for the four and one-half (4½) month period immediately preceding the day of his death. He had worked for approximately ten hours on that day. This record shows that he worked 50½ hours the week before his death and 50 hours the week before that. The testimony further shows that the number of hours worked each day and week varied considerably, and that a work day of ten hours was not unusual. His death occurred on Monday after a day off on Sunday.

Insofar as the claimants' position is concerned, the medical testimony, at best, was in dispute as to whether there was

a causal connection between the employment of the deceased and his fatal heart attack.

The foregoing testimony amply supports the factual finding by the Commission that there was no causal connection between the employment of the deceased and his fatal heart attack. His truck was in good mechanical condition and he was confronted with no unusual traffic condition. There was no acceleration in the performance of his duties. He was doing a normal day's work, similar to that which he had been doing for approximately nine years. While the weather was cold, he operated his truck from a heated cab, and the testimony fails to disclose any unusual exposure to weather conditions. There is testimony by the doctor who had been treating the deceased for a heart condition for several years that the employment did not cause the attack. The evidence clearly sustains the conclusion that the deceased was subjected to no unusual strain or exertion and that there were present no unusual and extraordinary conditions in the employment.

The judgment of the lower court is accordingly affirmed.

Affirmed.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.