18320

Jacqueline W. JONES, and Sam R. Jones, Jr., Michael W. Jones, Joyce S. Jones, by their Guardian Ad Litem Jacqueline W. Jones, Respondents, v. WILLIAMSBURG COUNTY and State Workmen's Compensation Fund, Appellants.

(141 S. E. (2d) 100)

*Messrs. Daniel R. McLeod, Attorney General,* and *David Aiken, Assistant Attorney General,* of Columbia, *for Appellants,*

*Messrs. Connor & Connor,* of Kingstree, *for Respondents,*

March 9, 1965.

LIONEL K. LEGGE, Acting Justice.

On July 16, 1962 while engaged in the performance of his work as a truck driver in the employ of Williamsburg County, Sam R. Jones had a fatal heart attack. Claim for benefits under the Workmen's Compensation Act was allowed by the Hearing Commissioner. His award was reversed by a majority of the Full Commission, whose ruling was in turn reversed by a circuit court order, from which this appeal comes.

The basic issue before the Commission was whether there was causal connection between the employment and the heart attack. That issue was factual, and its determination by the Commission is therefore conclusive on appeal if supported by any competent evidence. *Black v. Barnwell County,* 243 S. C. 531, 134 S. E. (2d) 753; *Rhodes v. Guignard Brick Works,* S. C., 140 S. E. (2d) 487, Opinion filed February 9, 1965.

Mr. Jones had been in the employ of Williamsburg County as a dump truck driver for more than a year and a half prior

to the date of his death. On that day and for two or three weeks prior thereto eight or nine trucks, including the one that he was driving, were engaged in hauling sand clay from a borrow pit for use in road construction at a point about three and a half miles distant. The trucks were loaded by dragline at the borrow pit, and from there they traveled for about a mile, along a narrow, sandy road to a main highway, on which they proceeded to its junction with the road under construction and thence along the latter to where the loads were to be dumped. About eleven o'clock on the morning of July 16 one of the truck drivers, on his way from the borrow pit, found Mr. Jones slumped over, unconscious, in the cab of his loaded truck, which had glided off the road at a point about half a mile from the borrow pit. He was taken to the hospital in Kingstree, but died on the way, without having regained consciousness.

The drag-line operator, who also on occasion drove one of the dump trucks hauling sand clay from the same borrow pit and over the same route, testified: that the work of driving such a truck was strenuous, its operation on the narrow, sandy road requiring considerable exertion on the part of the driver especially when pulling over to pass a truck coming from the opposite direction; that the day of the accident was a very hot one and that it is always pretty hot in the cab in summer; that the road was in the same condition that day as it had been before when he drove over it; that Mr. Jones had been driving dump trucks for the county for several years; that in this work the witness and Mr. Jones and the rest of the crew worked over all kinds of roads in the county; that Mr. Jones was doing his normal duties on the day of his death; that shortly after starting work that morning Mr. Jones, who had appeared to be "all right" at breakfast, told him that he had a pain in the chest but was going on with his work; and that he had completed seven or eight trips to and from the borrow pit before the fatal one.

Two of the other truck drivers also testified that the work was strenuous and the day hot and the road dusty. One of

them testified that he was with Mr. Jones at the borrow pit when the latter's truck was being loaded for what proved to be his last trip, and that they were laughing and talking a few minutes before Mr. Jones was stricken.

Dr. Sanders, who had been Mr. Jones' family physician, and who examined his body upon its arrival at the hospital, testified that for more than ten years prior to his death Mr. Jones had had diabetes of a type that could not be satisfactorily controlled with insulin; that this disease rendered him prone to heart trouble; and that his physical condition was such that he was likely to have a coronary failure at any time. He testified that, based upon the deceased's medical history and upon the testimony of his fellow workmen at the hearing before the Commissioner, it was his opinion that the deceased had died of a coronary occlusion probably precipitated by the exertion of driving the truck on the sandy road in the hot weather.

The evidence above summarized was quite adequate to support the conclusion that the work in which and the working conditions under which Mr. Jones was engaged at the time of his fatal seizure, although strenuous and uncomfortable, were usual and ordinary incidents of his employment. That the Commission so concluded is implicit in its finding that his death was not causally connected with or related to the work that he was doing, and was therefore not compensable as resulting from accident arising out of and in the course of his employment. Cf. *Rhodes v. Guignard Brick Works, supra.* That conclusion was factual; not lacking evidentiary support, it was binding upon the circuit court, whose judgment must therefore be reversed.

Reversed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.