23577

Alice McGUFFIN, Respondent v. SCHLUMBERGER-SANGAMO, and Insurance Company of North America, Appellants.

(414 S.E. (2d) 162)

Supreme Court

*James J. Reid*, Greenville, *for appellants.*

*Hal J. Warlick* and *Bryan D. Ramey*, Easley, *for respondent.*

Heard Dec. 6, 1991.

Decided Feb. 10, 1992.

TOAL, JUSTICE:

Respondent filed a claim seeking workers' compensation benefits contending she injured her back while lifting a tray of parts in the course of her employment with appellant, Schlumberger-Sangamo. The single commissioner awarded benefits. The Full Commission reversed the award. On petition for judicial review, the Circuit Court reversed, finding the Order of the Full Commission was clearly erroneous in view of the reliable probative and substantial evidence on the whole record. We affirm.

## ISSUE

The sole issue is whether the Order of the Full Commission denying benefits is supported by substantial evidence.

## APPLICABLE LAW

Although it is logical for the Full Commission, which did not have the benefit of observing the witnesses, to give weight to the hearing commissioner's opinion, the

Full Commission is empowered to make its own findings of fact and to reach its own conclusions of law consistent or inconsistent with those of the hearing commissioner. *Green v. Raybestos-Manhattan, Inc.*, 250 S.C. 58, 156 S.E. (2d) 318 (1967). *See* S.C. Code Ann. § 42-17-50 (1985). The final determination of witness credibility and the weight to be accorded evidence is left to the Full Commission. *Ross v. American Red Cross*, 298 S.C. 490, 381 S.E. (2d) 728 (1989).

A reviewing court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact. S.C. Code Ann. § 1-23-380(g) (1986). The findings of the Commission will be set aside only if unsupported by substantial evidence. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 276 S.E. (2d) 304 (1981). Substantial evidence is not a mere scintilla of evidence but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached. *Id.*

## DISCUSSION

The respondent testified, as part of her job for the past four months, she was required to lift heavy trays of parts eight to ten times a day. She testified on February 6, 1989, as she was picking up a tray of parts, she developed a "bad stinging" in her back. Although respondent denied mentioning her pain to anyone at work, a coworker testified respondent complained of back pain at the end of the day. At that time the respondent told her coworker her pain was related to her kidneys. The respondent had a history of a congenital deformity of the right kidney and had experienced soreness related to her kidneys in the past, although never to the extent she felt on this day. She denied any other history of back problems.

When respondent's pain continued to worsen during the night, she sought treatment in the local emergency room. The urologist who examined her at that time testified her complaints were certainly consistent with a kidney stone. A "white spot" was observed on x-ray in the vicinity of her left ureter. The respondent, however, underwent further testing which, the urologist testified, indicated there was in fact no

kidney stone on the left side. Other testing was performed including an urinalysis, cystoscope and bone scan. After these tests were performed, the urologist concluded her pain was probably musculoskeletal. Respondent was treated with muscle relaxants and her pain improved. The urologist testified the fact that she improved with bed rest and treatment for muscle strain indicated this was musculoskeletal pain.

Respondent was then discharged from the hospital and referred to an orthopedic surgeon. The surgeon testified the respondent told him she had been experiencing low back pain since lifting a heavy tray of parts at work and that the pain had been increasing in severity since the incident. At that time, five weeks after the incident, the surgeon detected objective signs of spasm of her lumbosacral muscles on the left. The surgeon made a definite diagnosis of a lumbosacral sprain. The surgeon further testified this condition was caused by lifting or lifting and twisting and that it was very difficult to have a muscle spasm without a specific precipitating event. When the surgeon was further questioned regarding the cause of the respondent's spasm, he testified if you have no pain and then have a specific event and develop pain after that, the event is related to the injury. The medical evidence was not disputed at the hearing.

In reversing the award of the single Commissioner, the Full Commission relied heavily upon the preliminary diagnosis made by the respondent and her attending physicians. The Commission put great reliance on the fact that the respondent did not immediately attribute her pain to her lifting. The respondent had been lifting these trays eight to ten times a day for four months without incident. Therefore, it was not unreasonable for her not to make the connection at the time. This is especially so when as her physicians testified her pain was consistent with kidney type pain. This reasonable, however erroneous, self-diagnosis does not alter the fact that all treating physicians determined her pain was not related to her kidneys but was in fact musculoskeletal.

Considering the record as a whole, the respondent's own misdiagnosis does not constitute substantial evidence from

which the Commission could infer that the respondent's muscle strain did not result from an accident at work.

Affirmed.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.