519 S.E.2d 102

**Anthony SHARPE, Respondent,**

v.

**CASE PRODUCE, INC., d/b/a Case Produce Co., Inc. and S.C. Workers' Compensation Uninsured Employers' Fund, Petitioners.**

No. 24982.

Supreme Court of South Carolina.

Heard June 8, 1999.

Decided Aug. 2, 1999.

Robert T. Williams, Sr., of Williams, Hendrix, Steigner & Brink, P.A., of Lexington, for respondent.

Ajerenal Danley, of Columbia, and W.T. Geddings, of Manning, for petitioners.

## ON WRIT OF CERTIORARI TO
## THE COURT OF APPEALS

WALLER, Justice:

We granted a writ of certiorari to review the Court of Appeals' opinion in *Sharpe v. Case Produce Company*, 329 S.C. 534, 495 S.E.2d 790 (Ct.App.1997). We reverse.

## FACTS

Sharpe worked for Case Produce packing and delivering cases of tomatoes. He filed a Workers' Compensation claim, alleging he had been injured in the course and scope of his employment. According to Sharpe's testimony, on Thursday, July 21st 1994, he was supposed to deliver 8 cases of tomatoes, weighing 25 lbs. each. Since it was a fairly small load, he decided to use his own car to deliver them. As he went to set the first two boxes of tomatoes in his trunk, he "felt like electricity go through my whole body.... So, I dropped the tomatoes and leaned up. When I leaned up my legs quit working and I fell on the pavement, skint my leg up and I couldn't move, I couldn't feel my legs." Sharpe testified that he had worked the three days prior to the accident without any problems. On cross-examination, Sharpe testified he was having some kidney pain down his left side prior to the date of the accident, for which his employer had offered him a back brace. After the accident, he was hospitalized for 10 days, during which he had disc surgery performed on his back.[1] When cross-examined about whether he had had a physical

---

1. According to the hospital discharge summaries, the surgery performed was a decompressive laminectomy of the T9, T10 and T11 discs.

altercation with his girlfriend, Shonda Goins Harper, the Saturday prior to the accident (July 16th), Sharpe denied that Harper had pushed him against a counter, or hurt his back in any way, and maintained she merely slapped him in the face and pushed him lightly in the chest. He denied that he went to work on Monday complaining of severe back pain due to the fight.

Sharpe's employer, Doc Case, presented an entirely different picture. Case testified that on Monday, July 18th, when he arrived at work he found Sharpe sitting on the front dock with a sore on his eye, his arms all scratched up and complaining he'd been in a fight and could hardly stand up because his back hurt so bad. He was leaning over the packing table or squatting down in the morning and was hurting so bad that Case sent him home at lunchtime. When he returned the next day, Sharpe told him his back still hurt pretty bad, so Case gave him a back brace to use. On Wednesday, Sharpe told Case he felt like he was a little better. According to Case, however, although Sharpe came to work Monday through Wednesday, he really was "too broke up and hurting to do anything." On Thursday, July 21st, while most of the other employees were on their morning break, Case heard Sharpe yell for help. He went and found Sharpe lying at least 4–5 feet from his car, between the car and the loading dock. Sharpe told Case he couldn't move his legs and asked him to call an ambulance. Case did not see the alleged accident, but he testified it did not look like the tomatoes had been dropped, as generally if the cases were dropped, the lids would pop.

Shonda Goins Harper, the girlfriend with whom Sharpe allegedly fought the Saturday prior to the accident, testified she and Sharpe were involved in a physical altercation on Saturday, July 16th, during which she pushed Sharpe pretty hard up against the sink counter and bar five or six times. The counter was at about the same height as Sharpe's incisions from his disc surgery. When she saw Sharpe a couple days after the fight, he told her he was still real sore and his back had been bothering him.

The only medical evidence in the record regarding the causation of Sharpe's back injury is 1) an undated note from Dr. Victoria Palkanis Samuels stating the injury and surgery

were a result of a work related accident, and 2) a "History" contained in the discharge summary of Lexington Medical Center indicating Sharpe was admitted "following a sudden loss of sensory motor function in the lower extremities with extreme midthoracic back pain which occurred when the patient was lifting at work." It is undisputed that Sharpe never told Doctor Samuels about the alleged altercation with Shonda Goins Harper.

After hearing the testimony, the Single Commissioner issued his order finding Sharpe did not sustain an injury by accident arising out of and in the course of his employment. The Commissioner specifically noted that he did not find Sharpe's testimony credible, but did find Case and Harper credible regarding their testimony that Sharpe injured his back during the confrontation on Saturday, July 16th. The Commissioner specifically discounted the undated report of Dr. Samuels. The Full Commission affirmed, as did the Circuit Court. The Court of Appeals reversed. It held there was "no evidence the injury, as Sharpe relate[d], did not happen." The Court of Appeals further found that the Full Commission had ignored the medical evidence. The Court of Appeals went on to hold that, even if Sharpe was injured in the altercation with Harper, he was nonetheless entitled to compensation due to the aggravation of his pre-existing condition.

## ISSUES

1. Did the Court of Appeals substitute its view of the evidence for the Commission's?
2. Did the Court of Appeals err in finding Sharpe was, in any event, entitled to compensation for the aggravation of his pre-existing injury?

## 1. SUBSTANTIAL EVIDENCE

As noted, the Court of Appeals found "no evidence the injury, as Sharpe relate[d], did not happen." This was error.

Whether there is any causal connection between employment and an injury is a question of fact for the Commission. *Rhodes v. Guignard Brick Works*, 245 S.C. 304,

140 S.E.2d 487 (1965). The Commission's decision must be affirmed if the factual findings are supported by substantial evidence in the record. *Minor v. Philips Prods.*, 329 S.C. 321, 494 S.E.2d 819 (1997). Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the Commission reached. *McGuffin v. Schlumberger–Sangamo*, 307 S.C. 184, 414 S.E.2d 162 (1992). The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commission's finding from being supported by substantial evidence. *Hoxit v. Michelin Tire Corp.*, 304 S.C. 461, 405 S.E.2d 407 (1991). Where there is a conflict in the evidence, the Commission's findings of fact are conclusive. *Id.* The final determination of witness credibility and the weight to be accorded evidence is reserved to the Commission and it is not the task of the court to weigh the evidence as found by the Commission. *Rogers v. Kunja Knitting Mills, Inc.*, 312 S.C. 377, 440 S.E.2d 401 (Ct.App.1994), *cert. dismissed as improvidently granted*, 318 S.C. 187, 456 S.E.2d 918 (1995).

■ Contrary to the Court of Appeals' holding, there was evidence, in the form of the testimony of Doc Case and Shonda Goins Harper, from which the Commission could have found that the accident, as reported by Sharpe, did not happen and that, in fact, Sharpe had "staged" the accident. It was for the Commission to determine the credibility of the witnesses. Although there was evidence, in the form of Sharpe's testimony, which would have supported a contrary finding, there is ample evidence in the record supporting the Commission's decision.

■ Moreover, the Court of Appeals erred in holding the Commission ignored the medical evidence, i.e., the undated note of Dr. Samuels. Recently, in *Tiller v. National Health Care Center*, 334 S.C. 333, 340, 513 S.E.2d 843, 846 (1999), this Court stated, "while medical testimony is entitled to great respect, the fact finder may disregard it if there is other competent evidence in the record.... Indeed, medical testimony should not be held conclusive irrespective of other evidence. Expert medical testimony is designed to aid the Commission in coming to the correct conclusion; therefore, **the Commission determines the weight and credit to be**

**given to the expert testimony.** Once admitted, expert testimony is to be considered just like any other testimony." (emphasis supplied, internal citations omitted). Accordingly, in deciding whether substantial evidence supports a finding of causation, it is appropriate to consider both the lay and expert evidence. *Id.* Moreover, in compensation proceedings, where uncontroverted medical opinions are merely deductions drawn from certain symptoms, the final conclusion remains with the triers of fact.[2] *Anderson v. Campbell Tile Co.*, 202 S.C. 54, 24 S.E.2d 104 (1943).

Here, in focusing solely on an undated medical note of Dr. Samuels to the effect that Sharpe's injury was the result of a work related accident, the Court of Appeals simply ignored the testimony of Doc Case and Shonda Harper that Sharpe was injured on Saturday, July 16th. It was within the Commission's discretion, as the ultimate fact-finder, to discount this evidence.

Although there was evidence from which the Commissioner could have gone the other way, there is also clearly evidence which would allow reasonable minds to reach the conclusion he reached. *McGuffin v. Schlumberger–Sangamo, supra.* Accordingly, we hold the Court of Appeals erred in substituting its view of the evidence for that of the Commission.

### 2. AGGRAVATION OF PRE–EXISTING INJURY

The Court of Appeals also held that even if Sharpe was injured in an altercation with Harper, he was nonetheless entitled to compensation for the aggravation of his injury from the July 21st accident. This was error.

The Single Commissioner specifically held that Sharpe did not sustain an injury by accident arising out of his employment on July 21st, 1994. Again, although there was evidence from which the Commissioner could have found that

---

2. Here, as there is no actual testimony from Dr. Samuels in the record, it is impossible to determine whether her opinion is based strictly upon medical symptoms reported to her by Sharpe, or on some other factors. The burden was on Sharpe to prove his injury arose out of employment. *Clade v. Champion Laboratories*, 330 S.C. 8, 496 S.E.2d 856 (1998).

an accident occurred on July 21st, and from which he could have held a prior injury was aggravated, there is ample evidence in the record from which reasonable minds could infer that Sharpe was actually injured on July 16th, that no accident occurred on July 21st, and that, in fact, Sharpe "staged" the July 21st accident. Accordingly, the Court of Appeals erred in finding the aggravation of a pre-existing injury where there is substantial evidence supporting the Commission's holding that Sharpe did not suffer an injury by accident on July 21st. The Court of Appeals' opinion is

**REVERSED.**

FINNEY, C.J., TOAL, MOORE, and BURNETT, JJ., concur.