638 S.E.2d 77

Susan REED–RICHARDS, Respondent,

v.

CLEMSON UNIVERSITY, Employer and State
Accident Fund, Carrier, Appellants.

No. 4162.

Court of Appeals of South Carolina.

Heard May 11, 2006.
Decided Oct. 9, 2006.
Rehearing Denied Dec. 18, 2006.

Cynthia B. Polk, State Accident Fund, of Columbia, Terry M. Mauldin, Cofield Law Firm, of Lexington, Thomas Carl Cofield, Cofield Law Firm, LLC, of Lexington, for appellants.

Bryan D. Ramey, Bryan D. Ramey & Assoc., PA, of Piedmont, John S. Nichols, Bluestein & Nichols, LLC, of Columbia, for respondent.

GOOLSBY, J.:

This is a workers' compensation case. Clemson University, the employer, and the State Accident Fund, the carrier,[1] appeal the award of lifetime benefits to Susan Reed–Richards. We affirm.[2]

## FACTS AND PROCEDURAL HISTORY

On November 13, 2000, Reed–Richards sustained an injury arising out of the scope of her employment as an administrative assistant at Clemson University. She sought lifetime medical care and weekly compensation benefits for life. Ap-

---

1. Clemson University and the State Accident Fund will also be collectively referred to as "Appellants."

2. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

pellants denied Reed–Richards had become a paraplegic as a result of the accident and sought to limit her benefits to the normal statutory maximum of 500 weeks.

In 1973, Reed–Richards had sustained a compression fracture of her spine at the T–11/T–12 vertebrae level as the result of a motor vehicle accident. She did relatively well after the accident until 1978, when she developed difficulty with bladder control and walking.

In 1979, Reed–Richards had surgery for a posterior fusion and the placement of Harrington rods in her spine. She did well after this procedure until 1993, when she began having some bladder leakage at night. In 1994, she underwent additional surgery, which included removal of the Harrington rods and "an anterior two-level corpectomy with strutting and fusion with plate." Shortly after these procedures, she lost control of her bowel and bladder and developed urinary retention. Because of increasing pain and bowel and bladder difficulties, she had still more surgery in 1995, after which she was able to control her bowel functions.

On August 14, 2000, Reed–Richards began working for Clemson University, performing clerical work. Approximately three months later, on November 13, 2000, she fell after catching her leg on an open file drawer.

As a result of the accident, Reed–Richards has to use a walker, something she never needed before. She has also lost the ability to control her bowels; they empty at random times, forcing her to wear adult diapers and restricting her from going out in public because of odor problems. Her bladder condition originating from her 1973 accident has worsened, requiring her to catheterize herself more often than she had to in the past. Because of these problems, she is able to perform only menial tasks and cannot pursue additional vocational training. In addition, she has had to take medications for anxiety, pain, and leg spasms.

After a hearing on April 17, 2002, the single commissioner issued an order finding Reed–Richards totally and permanently disabled, but limited her benefits to 500 weeks. Reed–Richards appealed to the full commission, alleging she was entitled to lifetime benefits. The full commission vacated the single commissioner's order and remanded the matter for a de novo hearing.

On remand, the single commissioner held a hearing on April 8, 2003. On September 16, 2003, the single commissioner issued an order finding Reed–Richards was a paraplegic as a result of the accident and therefore entitled to lifetime benefits. This finding was based in large part on the deposition and notes of Dr. David Shallcross, one of Reed–Richards treating physicians, who on March 21, 2003, wrote a letter stating in pertinent part as follows:

This patient has an incomplete paraplegia (is a paraplegic). 'Paraplegia', according to the International Standards of Neurologic Classification of Spinal Cord Injury, Revised Sixth Edition, dated 2000, is 'impairment or loss of motor and/or sensory function in the thoracic, lumbar, or sacral segments of the spinal cord secondary to damage of neural elements within the spinal canal.'

By order dated May 27, 2004, an appellate panel of the full commission upheld the single commissioner's order. Appellants sought judicial review in the circuit court, which issued an order dated August 15, 2002, affirming the full commission.

## DISCUSSION

■ 1. Appellants contend the circuit court erred in affirming the finding that Reed–Richards was a paraplegic and therefore entitled to lifetime workers' compensation benefits. We disagree.

The right of an injured worker to obtain lifetime workers' compensation benefits is controlled by South Carolina Code section 42–9–10. This section provides in pertinent part as follows:

Notwithstanding the five hundred week limitation prescribed in this section or elsewhere in this title, any person determined to be totally and permanently disabled who as a result of a compensable injury is a paraplegic, a quadriplegic, or who has suffered physical brain damage is not subject to the five hundred week limitation and shall receive the benefits for life.[3]

We understand Appellants' arguments to be as follows: (1) the circuit court erred in determining that, because the statute

3. S.C.Code Ann. § 42–9–10 (1985 & Supp.2005).

did not differentiate between complete and incomplete paraplegia, the legislature would have to make that distinction; (2) had the legislature intended to include incomplete paraplegia as a condition under which a claimant was eligible for lifetime benefits, it could have done so; (3) a holding that incomplete paraplegia can entitle a claimant to lifetime benefits would lead to an absurdly inconsistent result when considered with other workers' compensation statutes that set out a compensation scheme distinguishing between total loss and less than total loss; (4) it was improper to rely on both a medical text and a common usage dictionary to determine that the term "paraplegic" could include a diagnosis of incomplete paraplegia; and (5) the "liberal purpose" of the workers' compensation legislation "is not an unbridled fiat to engage in judicial legislation in violation of the separation of powers." [4]

We do not fault the workers' compensation commission or the circuit court for relying on both a medical text and a common usage dictionary in determining that the term "paraplegic" could embrace one diagnosed with "incomplete paraplegia" as opposed to "complete paraplegia." [5]

First, Dr. Shallcross expressly stated, albeit parenthetically, that Reed–Richards "is a paraplegic," thus implying she was eligible for lifetime benefits under section 42–9–10. It was reasonable for the commission to consider the authority on which he based this pronouncement.[6]

Second, as the circuit court aptly noted, the only alternative definition offered by Appellants was their counsel's "lay per-

---

4. *See Anderson v. Baptist Med. Ctr.*, 343 S.C. 487, 498, 541 S.E.2d 526, 531 (2001) (noting that even a liberal construction of workers' compensation statutes "'does not authorize the amendment, alteration or extension of its provision beyond its obvious meaning'") (quoting *Gajan v. Bradlick Co.*, 4 Va.App. 213, 355 S.E.2d 899, 902 (1987)).

5. The commission cited the 2000 edition of the *International Standards of Neurological Classification of Spinal Cord Injury*, to which Dr. Shallcross referred in explaining his diagnosis, and *Webster's Ninth Collegiate Dictionary* for the "plain and ordinary meaning of 'paraplegia.'"

6. As noted earlier in this opinion, Dr. Shallcross stated in his letter that the *International Standards of Neurological Classification of Spinal Cord Injury* defines paraplegia "as *impairment or* loss of motor and/or sensory function in the thoracic, lumbar, or sacral segments of the

son's definition" that "you have total and full and complete loss of use of your lower extremities." We agree with Reed–Richards and the circuit court that this definition is not evidence at all, let alone substantial evidence upon which to base a reversal of the commission.[7] Moreover, we are unaware of any legal authority restricting "plain and ordinary" meanings to commonly held stereotypes of the terms they describe.

We therefore hold the commission and the circuit court correctly interpreted the term "paraplegic" to include a diagnosis of incomplete paraplegia. This interpretation, though consistent with the legislative purpose of construing workers' compensation laws in favor of claimants,[8] does not rise to the level of judicial legislation. There was no need for the legislature to specify that a claimant can recover lifetime benefits based on a diagnosis of incomplete paraplegia if the claimant is totally and permanently disabled as a result of this condition.

■ 2. We do not address Appellants' contention that the interpretation of the term "paraplegic" endorsed by both the commission and the circuit court cannot be logically reconciled with other statutes within the South Carolina Workers' Compensation Act that set forth a partial loss ratio scheme on which statutory benefits are based. There is no explicit ruling on this argument by the single commissioner, full commission, or the circuit court, and the record does not indicate Appellants raised this omission in any post-trial motion; therefore, we cannot address it in this appeal.[9]

---

spinal cord secondary to damage of neural elements within the spinal canal." (Emphasis added.)

7. *See Ex parte Morris*, 367 S.C. 56, 64, 624 S.E.2d 649, 653 (2006) ("It is well established that counsel's statements regarding the facts of a case and counsel's arguments are not admissible evidence.").

8. *See Lizee v. South Carolina Dep't of Mental Health*, 367 S.C. 122, 130 n. 2, 623 S.E.2d 860, 864 n. 2 (Ct.App.2005) (noting "the principle that workers' compensation laws in general ... are to be liberally construed in favor of claimants and coverage").

9. *See Noisette v. Ismail*, 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (finding an issue was not preserved for appellate review when the trial

■ 3. Appellants further challenge the finding that Reed–Richards was a paraplegic under section 42–9–10 as a result of the accident on November 13, 2000. We hold there is substantial evidence on the record as a whole to support this finding.[10]

Appellants correctly note that, before the November 2000 injury, Reed–Richards had a seventeen-year history of back and spinal problems that included pain, bladder and bowel incontinence, and ambulatory difficulties. They also point to Dr. Shallcross's description on July 30, 2001, of Reed–Richards's injury as "incomplete paraplegia due to T–12 fracture," and there is no dispute that she had suffered a T–11/T–12 vertebrae fracture in 1973. Nevertheless, before the November 2000 accident, Reed–Richards had never been diagnosed with paraplegia and was able to work full time, including overtime. Although she had experienced numbness in her right leg before her on-the-job injury, there is no evidence that she ever had a problem with both legs before this accident. Likewise, although she had temporary bowel problems in the past, she did not have any trouble controlling her bowels from the time she began working for Clemson until her injury several months later. The change in her bowel condition is significant because, as Dr. Shallcross testified, the loss of control of her anal sphincter, as evidenced in an anal EMG, further convinced him that her complaints were genuine.

Dr. Shallcross further stated that "based on the fact that [Reed–Richards] was fully ambulatory without any assisted device prior to the injury and based on the fact that she was not suffering from fecal incontinence prior to that injury, her inability to work is pretty much all related to the workers' comp injury." Significantly, when asked specifically about the cause of her present symptoms, Dr. Shallcross responded that

court did not explicitly rule on the appellant's argument); *United Dominion Realty Trust v. Wal–Mart Stores*, 307 S.C. 102, 107, 413 S.E.2d 866, 869 (Ct.App.1992) (holding that, when the circuit court sitting in an appellate capacity does not address an issue and the appellant fails to move to alter or amend on that ground, the alleged error is not preserved for further appellate review).

**10.** *See Sharpe v. Case Produce, Inc.*, 336 S.C. 154, 160, 519 S.E.2d 102, 105 (1999) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commission's finding from being supported by substantial evidence.").

Reed–Richards "had a pre-existing injury to the lower part of her spinal cord *which was made worse by her workers' comp injury.*" (Emphasis added).[11]

Based on the foregoing, we hold the record in this case has substantial evidence to support the commission's finding that, pursuant to section 42–9–10, Reed–Richards became totally and permanently disabled as a result of the accident on November 13, 2000.

**AFFIRMED.**

BEATTY and WILLIAMS, JJ., concur.

---

11. The contention that the November 2000 accident alone would not have caused Reed–Richards's present condition is no reason for Appellants to disclaim liability. *See Brown v. R.L. Jordan Oil Co.,* 291 S.C. 272, 275, 353 S.E.2d 280, 282 (1987) ("It is no defense that the accident, standing alone, would not have caused the claimant's condition, because the employer takes the employee as he finds him."). Likewise, a showing that the accident resulted only in the exacerbation of existing problems would not preclude recovery. *See Mullinax v. Winn–Dixie Stores,* 318 S.C. 431, 437, 458 S.E.2d 76, 80 (Ct.App.1995) ("A condition is compensable unless it is due solely to the natural progression of a pre-existing condition.").