Timothy MCMAHAN, Appellant/Respondent,

v.

S.C. DEPARTMENT OF EDUCATION–TRANSPORTATION, Employer, and State Accident Fund, Carrier, Respondents/Appellants.

Appellate Case No. 2014–002294
Opinion No. 5415

Court of Appeals of South Carolina.

Heard March 15, 2016
Filed June 15, 2016
Rehearing Denied September 23, 2016

482

484

Kevin B. Smith, of Hoffman Law Firm, of North Charleston, for Appellant/Respondent.

J. Gabriel Coggiola and George Trask Miars, Jr., both of Willson, Jones, Carter, & Baxley, P.A., of Columbia, for Respondents/Appellants.

WILLIAMS, J.:

In this cross-appeal arising from a workers' compensation action, the estate of Appellant/Respondent Timothy McMahan (the Estate) appeals the Appellate Panel of the Workers' Compensation Commission's (the Appellate Panel) decision to deny the Estate permanent total disability benefits based upon its conclusion that McMahan had not attained maximum medical improvement (MMI) prior to his death. Respondents/Appellants South Carolina Department of Education and the State Accident Fund (collectively "SCDOE") cross-appeal, arguing the Appellate Panel erred in omitting a finding that McMahan was barred from receiving posthumous permanent disability benefits pursuant to section 42–9–280 of the South Carolina Code (2015). In the alternative, SCDOE claims that, even if the Estate could recover benefits after his death, McMahan's paraplegia would cause his disability award to abate pursuant to subsection 42–9–10(C) of the South Carolina Code (2015). SCDOE also argues the Appellate Panel should have included in its order a finding that the award of disability benefits violated SCDOE's due process rights. We reverse.

## FACTS/PROCEDURAL HISTORY

On June 15, 2011, McMahan was working for SCDOE as a bus mechanic when a bus he was repairing fell on top of him, crushing his spine. McMahan suffered a T–12 compression fracture and underwent two back surgeries at the Medical University of South Carolina (MUSC) on June 16, 2011, and October 10, 2011. Dr. Raymond Turner, a neurosurgeon at MUSC, performed both surgeries.[1] During McMahan's last visit at MUSC, he indicated he would be moving to Tennessee and requested a transfer of care and sufficient pain medication to last through his transfer.

McMahan subsequently moved to Tennessee with his wife to care for his elderly parents. McMahan's medical records indicated he saw Dr. Patrick Bolt, the physician SCDOE authorized to treat McMahan, on April 23, 2012. McMahan again visited Dr. Bolt's practice on May 11, 2012, at which time McMahan was evaluated by Dr. Bolt's physician's assistant, who discussed his evaluation and physical examination with Dr. Bolt that same day.

At McMahan's initial visit, Dr. Bolt noted McMahan's chief complaint was low back pain, particularly in his left lower extremity. Dr. Bolt's records indicated McMahan "walk[ed] with a markedly pitched forward gait . . . . He [wa]s only able to straighten to neutral, he [wa]s able to flex to 80% of normal. . . . His quadriceps [we]re 3/10 on the left, hip flexors [we]re 3/10 on the left, otherwise full strength in the lower extremities." In the "discussion/plan" portion of Dr. Bolt's notes, he stated the following:

I have declined to take over [McMahan's] pain management as this was a stipulation to my seeing the patient[;] [I] was [to see him] only for a surgical opinion. I have recommended that the patient be placed in pain management in the Knoxville area. . . . I will see the patient back after the imaging studies are obtained. We will see if there is any-

---

1. Specifically, McMahan underwent a T–12 corpectomy and fusion on June 16. Due to hardware failure from the initial surgery, Dr. Turner performed a second surgery on October 10, at which time McMahan received a T–11, T–12, and L–1 laminectomy and bilateral foraminotomies—with placements of pedicle screws at his T–10 and L–2 vertebrae—and a corrective T–12 corpectomy and fusion from his T–10 to L–2 vertebrae.

thing that may be recommended further from a surgical standpoint. Apparently, the patient is already at maximum medical improvement but, again, I have no records to confirm this. There is no change in restrictions at this time. Dr. Bolt performed X-rays during the initial visit and ordered an updated MRI, a CT scan, and a duplex scan on that date. After a review of those scans and McMahan's return visit on May 11, 2012, Dr. Bolt noted McMahan's symptoms were "exactly the same" as those from his prior visit. Dr. Bolt did not observe any new neural pinches on the MRI but ordered an EMG to rule out any radiculopathies.

McMahan died from an unrelated heart condition on October 6, 2012. On February 27, 2013, Dr. Bolt, as the authorized treating physician, completed a Form 14B for the Workers' Compensation Commission, indicating the date of McMahan's MMI was April 23, 2012. In addition, Dr. Bolt explained his conclusion regarding McMahan's impairment, stating "he had thought [McMahan] was previously at [MMI], [but] apparently that was not the case." According to Dr. Bolt, McMahan was at MMI when he saw McMahan on April 23, 2012. Dr. Bolt believed McMahan was totally disabled given his limited ability to walk and his need for a wheelchair. Based upon McMahan's spinal cord injury and a review of the American Medical Association (AMA) guidelines, Dr. Bolt concluded McMahan sustained a 54% impairment to his whole person.

The Estate subsequently filed a Form 50 on May 23, 2013, alleging McMahan sustained injuries to his head, brain, back, internal organs, teeth, legs, mouth, and ribs in the course and scope of his employment. SCDOE filed a Form 51 on June 13, 2013, admitting injury to McMahan's back and denying all other claims. The single commissioner held a hearing on August 15, 2013, and found McMahan reached MMI prior to his death. Further, the single commissioner concluded the Estate was entitled to total disability benefits under section 42–9–30(21) of the South Carolina Code (2015) based upon a 50% or greater loss of use to McMahan's back. Because McMahan was entitled to compensation pursuant to section 42–9–30, the single commissioner concluded the claim did not abate under the statute and, therefore, the Estate was entitled to the unpaid balance of McMahan's permanent and total disability benefits as prescribed by section 42–9–280.

SCDOE timely appealed to the Appellate Panel, and a review hearing was held on July 22, 2014. By order dated September 30, 2014, the Appellate Panel reversed the single commissioner's decision, finding McMahan was not at MMI prior to his death and, therefore, he was not entitled to permanent total disability benefits. This cross-appeal followed.

## STANDARD OF REVIEW

The Administrative Procedures Act (APA) establishes the standard for judicial review of workers' compensation decisions. *Pierre v. Seaside Farms, Inc.,* 386 S.C. 534, 540, 689 S.E.2d 615, 618 (2010). Under the APA, this court can reverse or modify the decision of the Appellate Panel when the substantial rights of the appellant have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence considering the record as a whole. *Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund,* 389 S.C. 422, 427, 699 S.E.2d 687, 689–90 (2010).

## LAW/ANALYSIS

### I. The Estate's Appeal

The Estate appeals the Appellate Panel's decision to reverse the award of permanent total disability benefits in its favor, arguing the only medical evidence in the record established McMahan attained MMI prior to his death. We agree.

Section 42–9–280 addresses situations like the instant case in which an injured claimant later dies from a cause unrelated to the workplace injury. Specifically, section 42–9–280 provides the following:

When an employee receives or is entitled to compensation under this title for an injury covered by the second paragraph of [s]ection 42–9–10[2] or 42–9–30 and dies from any other cause than the injury for which he was entitled to compensation, payment of the unpaid balance of compensation shall be made to his next of kin dependent upon him for

2. Subsection 42–9–10(B) of the South Carolina Code (2015) states that "[t]he loss of both hands, arms, shoulders, feet, legs, hips, or vision in both eyes, or any two thereof, constitutes total and permanent disability to be compensated according to the provisions of this section." Because McMahan's injury was to his back, this subsection is inapplicable.

support, in lieu of the compensation the employee would have been entitled to had he lived. But if the death is due to a cause that is compensable under this title and the dependents of such employee are awarded compensation therefor, all right to unpaid compensation provided by this section shall cease and determine.

Because McMahan sustained an admitted injury to his back, for the Estate to be entitled to compensation pursuant to section 42–9–280, his injury must be covered under section 42–9–30.

Subsection 42-9-30(21) states, in relevant part,

The compensation for partial loss of use of the back shall be such proportions of the periods of payment herein provided for total loss as such partial loss bears to total loss, except that in cases where there is fifty percent or more loss of use of the back the injured employee shall be presumed to have suffered total and permanent disability and compensated under [s]ection 42–9–10(B). The presumption set forth in this item is rebuttable . . . .

As an initial matter, we disagree that the dispositive question for purposes of the Estate's entitlement to compensation under section 42–9–280 is whether McMahan was at MMI prior to his death. Although the parties, the single commissioner, and the Appellate Panel focus on MMI as the lynchpin in the Estate's ability to recover benefits pursuant to section 42–9–280, we find this focus is misplaced. Based upon our review of case law and a plain reading of the applicable statutes, so long as McMahan sustained an injury covered by the second paragraph of section 42–9–10 or 42–9–30 and died from a cause unrelated to the injury, the Estate is entitled to recover the unpaid balance of McMahan's compensation. *See* § 42–9–280 (stating "[w]hen an employee receives or is entitled to compensation under this title for an injury covered by the second paragraph of [s]ection 42–9–10 or 42–9–30 and dies from any other cause than the injury for which he was entitled to compensation, payment of the unpaid balance of compensation shall be made to his next of kin dependent upon him for support").

Our conclusion is buttressed by *Dodge v. Bruccoli, Clark, Layman, Inc.*, in which we stated that MMI and disability are

not always inextricably intertwined. 334 S.C. 574, 581, 514 S.E.2d 593, 596 (Ct. App. 1999) (" 'Maximum medical improvement' is a distinctly different concept from 'disability.' "). Although a finding of MMI often coincides with an award of permanent disability benefits, *see Smith v. S.C. Dep't of Mental Health*, 335 S.C. 396, 399, 517 S.E.2d 694, 695–96 (1999) (holding it was appropriate to terminate temporary benefits in favor of permanent benefits upon a finding of MMI), an individual can also be permanently disabled and still have yet to achieve MMI.[3] Even if McMahan had not attained MMI by the time of his death, we hold he could still be permanently and totally disabled for purposes of sections 42–9–30 and 42–9–280.

To that end, the only medical evidence in the record regarding the extent of McMahan's injury and ensuing disability is that of SCDOE's authorized treating physician, Dr. Bolt. After Dr. Bolt examined McMahan, ordered X-rays, an MRI, a CT scan, a duplex scan, and an EMG, and reviewed all of these scans—with the exception of the EMG, which was not administered before McMahan passed away—he concluded McMahan was totally disabled and assigned a 54% impairment

---

3. We find the Appellate Panel misstated the law in its final order when it found "[i]t is well settled in South Carolina that the award of disability benefits is premature prior to the claimant reaching MMI." The Appellate Panel supported this statement by citing to *Smith* and stating our supreme court "not[ed] that the degree of permanent disability cannot be determined prior to MMI." The issue in *Smith*, however, was whether an employer could cease payment of temporary benefits if an employee had achieved MMI. 335 S.C. at 398, 517 S.E.2d at 695. Although our supreme court concluded it was appropriate to terminate temporary benefits in favor of permanent benefits upon a finding of MMI, the court never held an individual was precluded from a permanent disability award without a finding of MMI. *Id.* at 399–400, 517 S.E.2d at 695–96. We believe the correct interpretation of the law was aptly stated in *Bass v. Kenco Group*, wherein this court held as follows:

A declaration of [MMI] is irrelevant to the award of permanent partial disability in this case. "[MMI]" is a distinctly different concept from "disability." ... It is true that when a claimant receiving temporary benefits reaches [MMI] and is still disabled, temporary benefits are terminated and the claimant is awarded permanent benefits. ... It does not follow, however, that a claimant who has not reached [MMI] is precluded from an award of permanent benefits. 366 S.C. 450, 466–67, 622 S.E.2d 577, 585–86 (Ct. App. 2005) (internal citations omitted).

rating to his whole person pursuant to the AMA guidelines. Considering the severity of McMahan's accident, his two back surgeries, and his general prognosis, we agree with Dr. Bolt's conclusion that McMahan was totally and permanently disabled. Further, Dr. Bolt was the treating physician approved by SCDOE, and if SCDOE was dissatisfied with Dr. Bolt's assessment and evaluation, then it should have ensured Dr. Bolt had all the relevant medical records it now claims precluded him from making an accurate diagnosis prior to transferring McMahan's care from Dr. Turner to Dr. Bolt. Because we find Dr. Bolt properly concluded McMahan had sustained a 54% impairment to his whole person, we likewise agree with the single commissioner's finding that McMahan was permanently and totally disabled pursuant to section 42–9–30(21).[4] As a result, we find the Appellate Panel erred in denying the Estate's claim for compensation pursuant to section 42–9–280.

Furthermore, even if the Estate's entitlement to McMahan's benefits hinged on MMI, we nevertheless hold the Appellate Panel committed legal error in reversing the single commissioner and denying the Estate's claim for compensation. The *only* medical evidence in the record regarding MMI came from Dr. Bolt, and he stated on two separate occasions that he believed McMahan was at MMI. Although Dr. Bolt did not possess all of McMahan's medical records when he initially stated he was of the impression McMahan was at MMI, we find his evaluations and diagnostic testing were thorough and his conclusions were well-founded. We also disagree with SCDOE's argument that a recommendation for further pain management necessarily negated Dr. Bolt's MMI statement. *See Dodge*, 334 S.C. at 581, 514 S.E.2d at 596 (stating the fact a claimant has reached MMI does not preclude a finding the claimant still may require additional medical care or treat-

---

4. We are aware that a 54% impairment rating to the whole person does not necessarily equate to a 54% loss of use to the back under section 42–9–30. *See Sanders v. MeadWestvaco Corp.*, 371 S.C. 284, 292, 638 S.E.2d 66, 70 (Ct. App. 2006) (acknowledging that the commission is not bound by the opinion of medical experts and "may find a degree of disability different from that suggested by expert testimony"). However, because Dr. Bolt also concluded McMahan was totally disabled, and no medical evidence was submitted to the contrary, we find this is substantial evidence of McMahan's condition and support for the single commissioner's finding on this issue.

ment); *Scruggs v. Tuscarora Yarns, Inc.*, 294 S.C. 47, 50, 362 S.E.2d 319, 321 (Ct. App. 1987) (holding substantial evidence supported a finding of MMI despite the claimant continuing to receive physical therapy). Rather, due to the nature and severity of McMahan's back injury, we find it very likely that McMahan would continue to need pain management for the remainder of his life, irrespective of an MMI diagnosis. Accordingly, we reverse the Appellate Panel's order and find permanent total disability benefits were warranted pursuant to section 42–9–280.

## II. SCDOE's Cross–Appeal

SCDOE cross-appeals, arguing the Appellate Panel improperly omitted a finding that McMahan was barred from receiving posthumous permanent disability benefits because section 42–9–280 prohibits such an award after a claimant has died. Further, SCDOE claims a posthumous award of permanent disability would violate its right to due process because SCDOE was precluded from introducing evidence and cross-examining witnesses. Alternatively, SCDOE contends if this court finds a posthumous award is appropriate pursuant to section 42–9–280, then McMahan's award would abate because he was a paraplegic as defined by subsection 42–9–10(C). We address each argument in turn.

### A. Posthumous Permanent Disability Determination

■ SCDOE first claims section 42–9–280 does not provide for a posthumous adjudication of a claimant's permanent disability. We disagree.

Section 42–9–280 plainly affords dependent survivors all benefits due to an injured claimant who suffered a physical loss when the claimant later dies from a cause unrelated to the workplace injury. *See* § 42–9–280; *see also Stone v. Roadway Express*, 367 S.C. 575, 578, 627 S.E.2d 695, 696 (2006) (finding section 42–9–280 clearly affords dependent survivors all benefits due to an injured worker who suffers a physical loss under sections 42–9–10 or 42–9–30 when the worker dies from an unrelated cause). Although SCDOE argues a prior award of disability benefits is necessary for section 42–9–280 to apply, the plain language of the statute states otherwise. Specifically, section 42–9–280 provides, in part, the following:

When an employee receives or *is entitled to* compensation under this title for an injury covered by the second paragraph of [s]ection 42–9–10 or 42–9–30 and dies from any other cause than the injury for which he was entitled to compensation, *payment of the unpaid balance of compensation shall be made to his next of kin dependent upon him for support, in lieu of the compensation the employee would have been entitled to had he lived.*

(emphasis added). In the instant case, as stated in Part I, *supra*, McMahan was entitled to compensation for his work-related injury pursuant to section 42–9–30(21). Further, SCDOE accepted McMahan's claim and admitted he suffered a work-related injury to his back prior to his death. We find it would be absurd to preclude McMahan's widow from receiving compensation to which she is otherwise entitled solely because McMahan happened to die before the parties adjudicated McMahan's workers' compensation claim with finality. In our view, this is why the General Assembly specifically chose the language "receives or is entitled to compensation" when it drafted this statute, and we hold any different conclusion would run afoul of legislative intent. *See Browning v. Hartvigsen*, 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992) ("A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers."); *see also Peay v. U.S. Silica Co.*, 313 S.C. 91, 94, 437 S.E.2d 64, 65 (1993) ("[W]orkers' compensation statutes are construed liberally in favor of coverage. It follows that any exception to workers' compensation coverage must be narrowly construed." (internal citation omitted)).

## B. Due Process

■ In the alternative, SCDOE contends that, even if the Appellate Panel properly adjudicated McMahan's claim after his death, a posthumous award violated SCDOE's due process rights to conduct full discovery, to present and cross-examine witnesses, and to introduce evidence. We disagree.

■ The South Carolina Constitution provides that, in proceedings before administrative agencies, "[n]o person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due

notice and an opportunity to be heard." S.C. Const. art. I, § 22. Our supreme court has explained as follows:

Procedural due process requirements are not technical; no particular form of procedure is necessary. The United States Supreme Court has held, however, that at a minimum certain elements must be present. These include (1) adequate notice; (2) adequate opportunity for a hearing; (3) the right to introduce evidence; and (4) the right to confront and cross-examine witnesses.

*In re Vora*, 354 S.C. 590, 595, 582 S.E.2d 413, 416 (2003) (internal citation omitted).

After reviewing the record, we find SCDOE never deposed or examined the witnesses who would have knowledge of McMahan's condition and treatment. The only witness SCDOE was unable to depose or require to testify prior to the hearing before the single commissioner was McMahan. Even if McMahan was living when the parties litigated his entitlement to benefits, McMahan's testimony would not be dispositive on the contested medical issues presented to the single commissioner. To the extent McMahan's untimely death prevented SCDOE from deposing him regarding issues like his work history, education, and transferable skills, we note that McMahan's widow testified at the hearing before the single commissioner on these topics. Despite her presence and testimony before the single commissioner, SCDOE chose not to cross-examine her.

Furthermore, SCDOE never scheduled Dr. Turner's deposition nor requested that he testify before the single commissioner, despite Dr. Turner performing McMahan's back surgeries and providing post-operative treatment at MUSC. SCDOE now claims on appeal that Dr. Turner's silence in his medical notes regarding MMI meant McMahan had not attained MMI when Dr. Turner transferred McMahan to Dr. Bolt's care. We find this argument unpersuasive. The *only* doctor who evaluated McMahan prior to his death, requested and reviewed certain testing, and submitted medical opinions regarding MMI, disability, and impairment was Dr. Bolt. Despite Dr. Bolt's involvement in McMahan's treatment immediately preceding McMahan's death, SCDOE chose not to proceed with his deposition even after noticing it for August

21, 2013. Had SCDOE taken Dr. Bolt's deposition, we believe some of the evidentiary issues of which it now complains could have been addressed.

In sum, we find SCDOE had the opportunity to present evidence and to examine and cross-examine the necessary witnesses but chose not to prior to the hearing before the single commissioner. As a result, we decline to find a posthumous award of benefits pursuant to section 42–9–280 violated SCDOE's due process rights. To the contrary, we believe the posthumous award of benefits satisfied procedural due process requirements. *See In re Vora*, 354 S.C. at 595, 582 S.E.2d at 416 (stating "[p]rocedural due process requirements are not technical" and "no particular form of procedure is necessary").

### C. Paraplegia and Abatement

██ Last, SCDOE contends that, even if the Appellate Panel was permitted to adjudicate McMahan's entitlement to benefits after his death, the award would abate pursuant to subsection 42–9–10(C) as a result of McMahan's paraplegia. We disagree.

Subsection 42–9–10(C) states that "any person determined to be totally and permanently disabled who as a result of a compensable injury is a paraplegic, a quadriplegic, or who has suffered physical brain damage ... shall receive the benefits for life." Section 42–9–280 does not include awards made according to subsection 42–9–10(C) among those that survive a claimant's death from an unrelated cause. *See* § 42–9–280 (stating "[w]hen an employee receives or is entitled to compensation under this title for an injury covered by *the second paragraph of [s]ection 42–9–10* or 42–9–30 and dies from any other cause than the injury for which he was entitled to compensation, payment of the unpaid balance of compensation shall be made to his next of kin dependent upon him for support" (emphasis added)).

SCDOE claims McMahan clearly suffered from paraplegia as a result of his accident. SCDOE highlights the emergency room doctor's discharge notes the day after McMahan's accident, in which the doctor stated, "[McMahan] was found to be paraplegic. CT scan obtained showed of T12 compression

fracture with retropulsion." In response, the Estate argues this statement was not a diagnosis and paraplegia was not mentioned in the section of the discharge notes entitled "Diagnosis" and "Secondary Diagnosis." We agree with the Estate that this single statement is not dispositive on the issue of McMahan's paraplegia.

In addition, neither Dr. Turner nor Dr. Bolt diagnosed McMahan with paraplegia. Instead, the Estate references Dr. Turner's medical notes after McMahan's surgery in which Dr. Turned noted, "Patient is mobilizing well with a walker, given the initial spinal cord injury." Dr. Bolt's notes acknowledged McMahan's prior back surgery and his usage of a wheelchair. Dr. Bolt's records also indicated McMahan "walk[ed] with a markedly pitched forward gait .... He [wa]s only able to straighten to neutral, he [wa]s able to flex to 80% of normal. ... His quadriceps [we]re 3/10 on the left, hip flexors [we]re 3/10 on the left, otherwise full strength in the lower extremities."

SCDOE urges this court to consider the case of *Reed–Richards v. Clemson University*, in which this court upheld a lifetime benefits award and found the term *paraplegic* included a diagnosis of incomplete paraplegia. 371 S.C. 304, 309, 638 S.E.2d 77, 80 (Ct. App. 2006). SCDOE argues the claimant's physical limitations in *Reed–Richards* are almost identical to McMahan's, noting Reed–Richards' need for a walker and her incontinence issues after her accident. *See id.*, 638 S.E.2d at 78. We agree with SCDOE that Reed–Richards and McMahan suffered from several of the same problems after their accidents. However, unlike the claimant in *Reed–Richards*, McMahan was never diagnosed by either of his treating physicians with incomplete or total paraplegia. We are concerned with finding McMahan suffered from paraplegia when neither Dr. Turner nor Dr. Bolt affirmatively diagnosed him with this condition, despite McMahan's spinal cord injury and their ability to observe his progress post-accident. Further, we note SCDOE denied McMahan's claim for injury to his legs as a result of the accident, instead taking the position that McMahan's legs were not affected and not compensable injuries.

Given the foregoing, we find it would be illogical to permit SCDOE to deny McMahan's injuries to his legs at the outset

for treatment purposes but then argue his legs were affected for purposes of establishing paraplegia under section 42–9–10(C) so as to preclude the Estate from receiving his benefits pursuant to section 42–9–280. Accordingly, we reject SCDOE's argument and find McMahan's award does not abate pursuant to section 42–9–10(C).

## CONCLUSION

Based on the foregoing, the Appellate Panel's decision is **REVERSED.**

LOCKEMY, C.J, and MCDONALD, J., concur.